**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 18-4585**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LARRY LAMAR NANCE,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:17-cr-00404-FL-1)

Argued:  December 10, 2019                                    Decided:  April 21, 2020

Before GREGORY, Chief Judge, and NIEMEYER, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Judge Niemeyer joined.  Chief Judge Gregory wrote a separate opinion concurring in the judgment.

**ARGUED:** Jaclyn Lee DiLauro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Evan Rikhye, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Thomas L. Crosby, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

In 2018, Larry Lamar Nance pleaded guilty to two federal drug- and firearm-related offenses, reserving his right to appeal a sentence in excess of the advisory Guidelines range. The district court sentenced him to 123 months' imprisonment, well above the Guidelines range of 81 to 87 months. Nance appeals, maintaining that his sentence is both procedurally and substantively unreasonable. Finding no error, we affirm.

## I.

## A.

The conduct for which Nance was prosecuted in this case began on April 25, 2017.[1] Police officers responding to a noise complaint at a Fayetteville, North Carolina residence encountered several individuals, including Nance, in the front yard, along with six cars and the "strong smell of marijuana." J.A. 34. When the officers told the individuals that they intended to lock down the residence and apply for a search warrant, Nance and others fled the scene. After obtaining a warrant, the officers searched one of the cars, which belonged to Nance, and found heroin, cocaine, and cocaine base. Nance was discovered hiding in a neighbor's shed, arrested on state charges, and then released the following day.

---

[1] Except as otherwise noted, the facts in this opinion are taken from the government's factual basis in support of the plea agreement, *see* J.A. 34–36, the parties' sentencing memoranda before the district court, *see* J.A. 39–64, and the Presentence Investigation Report, *see* J.A. 109–124 (under seal).

Two days after that, Fayetteville police responded to a domestic disturbance complaint from Nance's former girlfriend, who reported that Nance was sitting in his car in her driveway. She told the officers that Nance had "previously struck her and put a gun to her head," J.A. 49 n.5, and she was afraid that he was currently armed. When officers approached the vehicle, Nance began driving forward and refused to comply with instruction to stop and show his hands. One officer opened the passenger door to turn off the engine and saw a black handgun on the passenger seat. After Nance was removed from the vehicle and attempted unsuccessfully to flee, he was arrested. In addition to the gun – a .45 caliber handgun with a bullet in the chamber – the officers recovered heroin and marijuana from the car. Again, Nance was detained on state charges and then released the following day.

Based on these incidents, a federal grand jury returned a four-count indictment charging Nance with drug and firearm offenses. Nance entered into a plea agreement with the government, pleading guilty to Counts One and Three – possession with intent to distribute cocaine, cocaine base, and heroin, in violation of 21 U.S.C. § 841(a)(1); and using and carrying a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) – in exchange for dismissal of the other two counts. Pursuant to the plea agreement, Nance reserved the right to appeal a sentence in excess of the applicable Guidelines range established at sentencing.

**B.**

Prior to sentencing, the United States Probation Office submitted a Presentence Investigation Report ("PSR") to the district court and the parties. The PSR recounted

3

Nance's "very unstable childhood," during which he lived at different times with his mother and father – both of whom were heavy drug users – and other relatives. J.A. 118. The PSR noted that Nance has used drugs since age nine, beginning with marijuana and later graduating to opiates and heroin.

The PSR also described Nance's long criminal history, and because that history became the central issue at Nance's sentencing, we recount it in detail here. First came a block of offenses beginning in 2001, when Nance left school at age 16, and ending in 2005, when Nance was 20. At age 16, Nance was charged with possession of a stolen motor vehicle, breaking and entering, and larceny after breaking and entering. At age 18, he was charged with possession with intent to manufacture, sell, or deliver cocaine. He pleaded guilty to each of these offenses and was placed on probation. While on probation, at age 19, he was charged with burglary and kidnapping in connection with a single offense, though the kidnapping charge later was dismissed.

Then, in 2005, when Nance was 20 and on probation, he committed two more offenses over a two-day period, conspiring to commit armed robbery and discharging a weapon into an occupied vehicle. He pleaded guilty to those charges in 2006 and was sentenced to 23 to 37 months' imprisonment. In 2008, while serving that sentence, Nance pleaded guilty to the earlier burglary charge and was sentenced to an additional 61 to 83 months' imprisonment.

As a result of this series of convictions, Nance was incarcerated from 2006 to 2013. During that time, the PSR reports, he incurred 79 disciplinary infractions. Nance was

4

released from custody to post-release supervision on July 12, 2013, when he was 28 years old.

According to Nance's counsel, this 2013 release from prison was a turning point of sorts in Nance's history: From that time on, Nance, now an adult, purportedly committed only non-violent offenses. And indeed, Nance's next offense, committed six months after his release, was marijuana possession, for which he was once again incarcerated; and the one after that – committed in June of 2015 when Nance was 30, eight months after he was released from custody a second time – was possession with intent to manufacture, sell, or deliver marijuana.

After that came the conduct at issue in this case – the April 2017 drug and firearm offenses. Those offenses, as noted above, included the carrying of a firearm in furtherance of a drug-trafficking crime, to which Nance pleaded guilty. The PSR also recounted two other arrests that occurred during roughly the same time period, both of which stemmed from violent incidents and both of which resulted in charges against Nance that ultimately were dismissed. First, on February 2, 2017, Nance was charged with breaking and entering to terrorize or injure and domestic criminal trespassing, after he allegedly broke into his former girlfriend's home and remained there after being ordered to leave. That charge was dismissed when Nance was indicted for the instant offenses. And second, on May 17, 2017, Nance was charged with assault when he allegedly hit a female victim in the head with his fist. That charge also was dismissed, this time because the witness – presumably, the victim of the assault – did not make herself available to testify.

5

During this period, Nance was on probation stemming from his June 2015 drug offense. Because Nance violated the terms of his supervision in multiple respects – failing to meet his monetary obligations, failing to report as directed, testing positive for drug use, failing to comply with his mental health intervention, and engaging in new criminal conduct – his probation was revoked on May 23, 2017, and he was sentenced to 90 days' custody. Some months after he was released in August of 2017, Nance was arrested on the instant offenses, and he has been in custody since.

Having recounted this extensive criminal history, the PSR calculated the appropriate advisory Guidelines range. As to Count One – the drug offense – the PSR calculated a base offense level of 12. *See* U.S.S.G. § 2D1.1. Deducting two levels for acceptance of responsibility, *see id.* § 3E1.1(a), and applying a criminal history category of V in light of the convictions discussed above, the probation officer determined that Nance's advisory Guidelines sentencing range on Count One was 21 to 27 months. On Count Three – the § 924(c) firearm offense – a mandatory sentence of 60 months consecutive to the sentence on Count One would be imposed as required by statute. *See* 18 U.S.C. § 924(c)(1)(A), (D)(ii); U.S.S.G. §§ 2K2.4, 3D1.1(b)(1). The effective Guidelines range, then, was 81 to 87 months. The PSR also suggested that the court might wish to consider an upward departure, because the Guidelines calculation did not adequately reflect the severity of Nance's criminal history.

The parties both filed sentencing briefs with the district court. The government moved for an "upward departure and/or variance," arguing that Nance's Guidelines range "fail[ed] to adequately reflect the seriousness of the Defendant's criminal history and the

6

strong likelihood that he will continue to commit crimes once released from custody." J.A. 52. Among other factors, the government pointed to Nance's "history of committing crimes while he awaited trial for prior arrests or while under court supervision," *id.* at 41; dismissed charges for violent conduct that were not accounted for by the Guidelines calculation; and Nance's most recent arrest for a violent offense, in May of 2017, when he was "arrested for striking a woman in the head with his fist." *Id.* at 49. A sentence between 262 and 327 months, the government concluded, would be appropriate to "promot[e] respect for the law and protect[] the public." *Id.* at 52.

Nance, in turn, argued for a sentence within the Guidelines range of 81 to 87 months. Nance's counsel recognized that "Nance's criminal history is not short and [would] likely give the Court pause." *Id.* at 60. But counsel urged the court to view that history not as one "uninterrupted violent criminal spree," *id.* at 61, but rather as two distinct episodes: The period before Nance's 2006 incarceration, in which he engaged in violent criminal offenses; and then the period beginning in 2013, when Nance was first released from prison. Since 2013, counsel argued, although Nance had continued to commit criminal offenses, they were "not of the same magnitude as his prior conduct," and, in particular, were not violent: "[T]here is no evidence [that Nance has] been a recidivist in terms of violent crime." *Id.* at 61.

## C.

The district court conducted a lengthy sentencing hearing, beginning by describing the Guidelines recommendation of 21 to 27 months on Count One, and the mandatory, consecutive 60-month sentence on Count Three. The court also recognized at the outset

7

the difficulties Nance suffered in his childhood – in particular, his early exposure to drugs – and Nance's drug addiction.

The government then argued in support of its motion for an upward departure or variance. Again, the government focused on Nance's criminal history, contending that the Guidelines criminal history score "simply doesn't reflect the severity of his actions or the danger that he poses to the community." J.A. 70. It emphasized Nance's 79 disciplinary infractions while in custody, and that many of Nance's offenses were committed while other charges were pending or Nance was on probation – all of which, according to the government, indicated a lack of respect for the law. The instant offenses, the government concluded – the April 2017 gun and drug charges – were a case in point: Just days after Nance was arrested on drug charges on April 25, he was arrested again, and again was discovered with heroin. *Id.* at 71. As a result, the government requested that the court sentence Nance to 262 to 327 months, which it recognized was a "big departure" from the Guidelines range of 81 to 87 months. *Id.*

The court then heard from Nance's counsel, who likewise focused on Nance's criminal history. Counsel acknowledged at the outset that "the Court is probably concerned by [Nance's] criminal record, and I think that's probably what is driving most of this proceeding." *Id.* at 73. But again, counsel urged the court to differentiate between Nance's earlier offenses and his later ones: All of Nance's violent crimes occurred when Nance was 20 or younger; and after he was incarcerated for those crimes in 2006 and then released in 2013 at the age of 28, he had not "similarly recidivated" in the form of violent offenses. *Id.* at 74. This de-escalation, counsel argued, had two implications: First, as to Nance's

8

culpability, neurological research "indicates that the frontal lobe, which is responsible for impulse control, is not fully formed until [age] 25." *Id.* Second, the lack of recent violent offenses showed that Nance was now "capable of controlling himself," *id.* at 77, and could be rehabilitated. Accordingly, counsel concluded, a sentence in the Guidelines range, which would keep Nance "under the oversight of the criminal justice system" until his "mid 40s," would be sufficient. *Id.* at 75.

The court then engaged Nance's counsel in a comprehensive discussion, which spans eight pages of the sentencing transcript and included a recess to acquire additional information. *See id.* at 77–84. To start, the court challenged the core premise of counsel's argument: that Nance's violent days were behind him once he was released from prison in 2013. The court pointed to Nance's two arrests in 2017 on violent charges: one for "breaking and entering to terrorize or injure, domestic criminal trespassing," dismissed only because he was indicted in the instant case; and one for "assault on a female," not pursued only "because the witness would not make herself available." *Id.* at 78–79. Those cases reflected Nance's continued "assaultive tendencies," the court determined, and were highly relevant "in the context of an argument that says [Nance has] been able to control himself" since his 2013 release. *Id.* at 78.

The court also focused on Nance's repeated supervised release violations and violations of prison rules, as reflected by the 79 disciplinary infractions incurred during his first incarceration. Again, counsel argued that Nance had shown an ability to change, and that his most recent incarceration, which separated Nance from his two-year-old son, had made him more "circumspect about his behavior" as he came to appreciate the importance

9

of staying out of prison. *Id.* at 81. The district court addressed that argument directly, taking it seriously enough to call for a brief recess so that information about Nance's current behavior while in custody could be obtained. With that information in hand – which showed that in just the last month, Nance had been disciplined twice for exposing himself and refusing to put on clothes, "failing multiple times to follow directions" – the court concluded that instead of a change in attitude, Nance's behavior reflected "the same old same old." *Id.* at 84.

After Nance addressed the court, the district court imposed a sentence of 63 months on Count One – substantially above the Guidelines range of 21 to 27 months – followed by the mandatory consecutive 60-month sentence on Count Three, for a total term of 123 months' imprisonment. That sentence, the court noted, though higher than the Guidelines range, also was substantially lower than the government's recommended 262 to 327 months: "I tempered the response. I think 123 months is sufficient." *Id.* at 89.

Addressing Nance, the court explained:

> [Y]ou're a very dangerous person, and you have no respect for authority. I do not believe a sentence in the guideline range takes into consideration fully your background and your history and the extent of your criminal history, the likelihood of recidivism, the dangerousness of you.

*Id.* at 85–86. Referring to the Guidelines offense-level calculation, the court continued:

> So if I go forward from a level five to a six, 24 to 30 doesn't capture it. It's only when I go down to a level 17 that I begin to think that I'm in a range that will accomplish the purposes of sentencing. And if in error on my decision to depart, I reach the same number of 63 months on the first count under 18, United States Code, Section 3553, the need to promote respect for the law, to discourage this type of conduct, to protect the public is so compelling in this case.

*Id.* at 86.

The district court went on to recommend "the most intensive substance abuse treatment program" available because Nance "really need[s] that help." *Id.* at 87. The court also recommended a comprehensive mental health evaluation: "You had some serious things happen to you through no fault of your own as a child. But through fault of your own you are continuing to act against society, against norms. You need somebody to be helping you with mental health treatment." *Id.* Finally, the court told Nance that it would recommend him for education and vocational training and urged him to take advantage of potential good-time credit by following directions while in custody.

## II.

## A.

On appeal, Nance challenges his sentence, arguing that it is procedurally and substantively unreasonable. We review the reasonableness of a sentence under 18 U.S.C. § 3553(a) using an abuse-of-discretion standard, regardless of "whether [the sentence is] inside, just outside, or significantly outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 41 (2007). First, we evaluate procedural reasonableness, determining whether the district court committed any procedural error, such as improperly calculating the Guidelines range, failing to consider the § 3553(a) factors, or failing to adequately explain the chosen sentence. *See id.* at 51. If we determine that the district court has not committed procedural error, only then do we proceed to assess the substantive reasonableness of the sentence. *Id.* A review for substantive reasonableness takes into account the "totality of

11

the circumstances" to determine "whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). Even if "the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

With these governing principles in mind, we turn to the case at hand.

**B.**

We begin with Nance's claim that his above-Guidelines sentence, characterized as an upward variance, is procedurally unreasonable because the district court inadequately articulated its reasons for the sentence.[2] We cannot agree with this assessment of the district court's efforts. The district court here conducted a thorough sentencing hearing, engaging defense counsel's arguments, explaining where it found them wanting, and

---

[2] The degree to which the district court intended Nance's 63-month sentence on Count One as a departure, as well as a variance, is not entirely clear from this record. At sentencing, as noted above, the court referred both to a departure and a variance; but in its written statement of reasons, the court described Nance's sentence only as a variance. We need not resolve that question to decide this appeal. When, as here, a district court offers alternate and independent justifications for imposing a sentence outside the Guidelines range, we will uphold the sentence if one of those justifications is reasonable, regardless of the validity of the other. *See United States v. Rivera-Santana*, 668 F.3d 95, 104 (4th Cir. 2012); *United States v. Evans*, 526 F.3d 155, 165 (4th Cir. 2008). So even assuming, as Nance argues, that his sentence failed to comply with certain procedural requirements for upward departures, we will affirm it if it is reasonable as an upward variance. And for the reasons given below, we conclude that Nance's sentence, understood as a variance, is both procedurally and substantively reasonable.

recessing so that additional relevant information could be considered. It imposed a sentence individualized to Nance, taking account of the "characteristics of the defendant and the facts of the case." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017). We see no failure of procedural reasonableness on this record.

As is well understood, to meet the procedural reasonableness standard, a district court must "conduct an 'individualized assessment' of the facts and arguments presented and impose an appropriate sentence," and it must "explain the sentence chosen." *Blue*, 877 F.3d at 518 (quoting *Gall*, 552 U.S. at 50). Specifically, a district court's explanation should "provide some indication [] that the court considered the § 3553(a) factors" and applied them to the particular defendant, *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006); *see also Blue*, 877 F.3d at 518, and also that it considered a defendant's nonfrivolous arguments for a lower sentence, *see Montes-Pineda*, 445 F.3d at 380; *Blue*, 877 F.3d at 518–19.

Importantly, it is also well established that our review of a district court's sentencing explanation is not limited to the court's statements at the moment it imposes sentence. "[W]e do not evaluate a court's sentencing statements in a vacuum." *Montes-Pineda*, 445 F.3d at 381. Instead, we look at the full context, including the give-and-take of a sentencing hearing. *Id.* Where a sentencing court hears a defendant's arguments and engages with them at a hearing, we may infer from that discussion that specific attention has been given to those arguments. *See Blue*, 877 F.3d at 521. And where a sentence is tailored to address individual characteristics – here, for instance, the requirement of drug treatment for Nance, who struggles with drug addiction – we may infer consideration of the relevant personal

13

characteristics under § 3553(a). *See id.* (citing *United States v. Johnson*, 445 F.3d 339, 346 (4th Cir. 2006)).

Measured against that standard, the district court's sentencing explanation was fully sufficient. First, its statement at sentencing made clear that it was applying the § 3553(a) factors – including the need to protect the public – to Nance's specific characteristics and criminal history: "[Y]ou're a very dangerous person, and you have no respect for authority. I do not believe a sentence in the guideline range takes into consideration fully your background and your history and the extent of your criminal history, the likelihood of recidivism, the dangerousness of you." J.A. 85–86. And the court's written statement of reasons was to the same effect, referring specifically to the § 3553(a) factors and finding Nance's sentence necessary, among other things, to promote respect for the law, to afford adequate deterrence, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a).

Second, in imposing sentence, the district court took account of personal characteristics that the defense had identified as mitigating. In recommending mental health treatment to address the effects of Nance's very difficult childhood, for instance, the district court recognized the "serious things" that Nance underwent as a child "through no fault of [his] own," but also concluded that Nance's current "act[ing] against society," by contrast, was "through fault of [his] own." J.A. 87. Likewise, the district court's decision to recommend Nance for "the most intensive substance treatment program" makes clear that it considered Nance's struggles with drug addiction. *Id.*; *see Blue*, 877 F.3d at 521

(inferring consideration of mitigating argument from sentence tailored to address personal characteristic).

The most important issue at sentencing, of course, was Nance's long criminal history, *see* J.A. 73 (defense counsel opening by recognizing that Nance's "criminal record" is "what is driving most of this proceeding"), about which the defense advanced one overarching mitigating argument: Although Nance's early and youthful history was marked by violent offenses, his more recent criminal conduct – after his release from prison in 2013, at age 28 – was no longer violent, reflecting a new capacity for self-control and potential for rehabilitation. The district court engaged with that argument directly and repeatedly at the sentencing hearing. Perhaps most important, the transcript makes clear that the court rejected the core premise for the argument, emphasizing Nance's recent 2017 arrests – for breaking and entering with intent to terrorize or injure and domestic criminal trespass, and for assault on a female – and the continued "assaultive tendencies" they indicated, well past Nance's initial term of incarceration. *Id.* at 78. Relatedly, the district court expressly confronted the broader suggestion that the nature of Nance's recent offenses showed a willingness and ability to change. Indeed, the court even called a brief recess to explore that argument further, and it was only after the court was armed with new information about Nance's persistent misconduct during his (then) current pretrial detention that it determined the argument did not hold up to scrutiny.

Faced with this thorough airing of his position at sentencing, Nance contends that the district court nevertheless erred by neglecting to address certain *specific* claims made in support of his general argument that his violent offenses are in his past and that he has

since changed. We disagree. To start, several of the specific claims Nance identifies in fact were expressly addressed and rejected by the district court, as we describe above. *See id.* at 77–78 (rejecting argument that Nance has not exhibited violent behavior since his 2013 release from incarceration); *id.* at 82–84 (rejecting argument that time apart from his two-year-old son inspired a change in Nance's behavior). But more important, the district court, having fully addressed Nance's central thesis – that his purportedly de-escalating criminal history made a Guidelines sentence appropriate – was not also required to address separately each supporting data point marshalled on its behalf.

Nance argues, for instance, that the district court offered no response when, to show the non-violent nature of his more recent offenses, he pointed to the fact that the instant § 924(c) offense – carrying a firearm in furtherance of a drug-trafficking offense – did not involve actual use of the gun. But there is nothing intrinsically mitigating about carrying a firearm in connection with a drug-trafficking offense, whether or not the gun is fired; this point is relevant only insofar as it supports Nance's broader argument that his more recent conduct is non-violent. Indeed, that is exactly the way counsel presented it, after the court raised its concern about the "assaultive tendencies" demonstrated by Nance's 2017 arrests:

> I understand the Court's concern. I would point out that there is not a lot of evidence that he's engaged in any type of violent burglary or using guns. *I understand he's got a gun charge in this case, but there is no evidence he used it.* And all I'm saying to the Court is that I believe that there is some evidence of maturity, that there is some evidence of ability to change.

*Id.* at 78–79 (emphasis added). The precise nature of the offense conduct in this case, in other words, was offered in support of Nance's principal argument for a Guidelines sentence: that the evolution of Nance's criminal history indicates that he is unlikely to

16

commit future violent offenses. And *that* argument, as we have explained, was thoroughly considered by the district court.

This is not to suggest, of course, that in evaluating a district court's sentencing explanation, we may guess at which arguments the court might have considered or assume that the court "has silently adopted arguments presented by a party." *United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009). We may not. But where, as here, the record makes clear that the district court has meaningfully considered a defendant's nonfrivolous mitigating arguments, fulfilling its obligation to "provide a rationale tailored to the particular case at hand and adequate to permit meaningful appellate review," *id.* at 330 (internal quotation marks omitted), we will not require more. *Cf. Mendoza-Mendoza*, 597 F.3d at 218 ("It would be wholly contrary to the Supreme Court's conferral of discretion on trial courts if we were to play a game of 'Gotcha!' with respect to the sentencing transcripts we review.").

In sum, the transcript of the sentencing proceeding indicates that in fashioning Nance's sentence, the court took into account Nance's extensive criminal history, including those offenses committed as an adult and after his 2013 release; his pattern of reoffending upon release; his disciplinary infractions in custody and inability to comply with the terms of his release; and the fact that the offenses of conviction occurred over the course of days, in which he was arrested once, released, and then arrested again just days later. Given the extent of the district court's engagement with Nance's counsel on these issues at sentencing, we need not "guess at the district court's rationale," *Carter*, 564 F.3d at 329; the court's rationale is patently clear. Because the record allows us to determine that the

17

court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority," *Rita v. United States*, 551 U.S. 338, 356 (2007), we conclude that Nance's sentence is procedurally reasonable.

**C.**

We turn next to Nance's argument that his sentence is substantively unreasonable. As described above, Nance's original Guidelines range called for a sentence of 21 to 27 months' imprisonment on his Count One conviction of possession with intent to distribute cocaine, cocaine base, and heroin, followed by a mandatory 60-month consecutive sentence on his Count Three firearm conviction under § 924(c), for a total of 81 to 87 months. Instead, the district court varied upward as to Count One, from 21 to 27 months to 63 months, for a total of 123 months' imprisonment. According to Nance, that sentence is substantively too high, especially – again – given that his prior violent offenses date back to his youth, while his conduct since his 2013 release from prison purportedly has not been similarly violent.

To assess this argument, we "examine[] the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Mendoza-Mendoza*, 597 F.3d at 216. Where, as here, the sentence is outside the advisory Guidelines range, we must "consider whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." *United States v. Howard*, 773 F.3d 519, 529 (4th Cir. 2014) (internal quotation marks omitted). That said, "district courts have extremely broad discretion when determining the

18

weight to be given each of the § 3553(a) factors," *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011), and the fact that a "variance sentence deviates," even "significantly," from the Guidelines range "does not alone render it presumptively unreasonable," *United States v. Rivera-Santana*, 668 F.3d 95, 106 (4th Cir. 2012). Instead, we must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

Here, the record reflects that the district court conducted a thorough, individualized assessment of Nance and his offense conduct in light of the § 3553(a) factors, and we cannot conclude that the court's exercise of discretion in formulating Nance's sentence is unreasonable. For instance, and as discussed above, the district court carefully considered Nance's "history and characteristics," 18 U.S.C. § 3553(a)(1), specifically recognizing Nance's difficult childhood and substance abuse issues at sentencing. And in considering what sentence would promote respect for the law, afford adequate deterrence, and protect the public, *see id.* § 3553(a)(2)(A), (B), (C), the district court heard and addressed Nance's argument that most of his prior convictions – and all for violent conduct – occurred before he turned 25 years old, that he had not recidivated with similarly violent offenses, and that his conduct since his 2013 release from prison illustrated a willingness to change and a lack of future dangerousness.

Relying heavily on our decision in *United States v. Howard*, 773 F.3d 519 (4th Cir. 2014), Nance maintains that the district court abused its discretion by placing too much emphasis on his juvenile offenses. In *Howard*, we held that a district court abused its discretion by imposing a life sentence – an extreme departure from the 121-month high

19

end of the Guidelines range – based almost exclusively on a "stale criminal history" of offenses, mostly non-violent, committed while the defendant was a teenager. *Id.* at 535. By focusing excessively on crimes committed when the defendant was between 16 and 18 years of age, we reasoned, the district court had "failed to appreciate" both the diminished culpability of juvenile offenders and the prospect that the "impetuousness and recklessness" of youth may subside as individuals mature. *Id.* at 532 (internal quotation marks omitted).

We think this case is different. First and most important, Nance's juvenile offenses were not the sole, or even primary, basis for the district court's decision to vary upward here. To the contrary: As we have described in detail, most of the sentencing hearing was given over to a discussion of Nance's conduct *as an adult*, and whether it bore out defense counsel's central argument that Nance had left his youthful aggression behind and demonstrated a capacity for maturity and change. The district court resolved that question against Nance, but only after considering such factors as Nance's "consistent pattern of recidivism" after his first release from prison, when he was an adult, *see Howard*, 773 F.3d at 530 (distinguishing case in which former juvenile offender "displayed a consistent pattern of recidivism immediately upon release from prison"); the "assaultive tendencies" illustrated by Nance's 2017 arrests, when Nance was in his thirties, J.A. 78; and Nance's continued and then-current refusal to abide by prison regulations as an adult. Weighing these considerations against Nance's juvenile status when he committed his earlier offenses, of course, is a matter of district court discretion: "While the consideration of one § 3553(a) factor to the exclusion of the others is not appropriate, it is not required that the

20

district court somehow give all the different factors precisely equal weight. Sometimes one factor will outweigh the others. Sometimes one factor will stand out." *United States v. Fowler*, 948 F.3d 663, 672 (4th Cir. 2020) (citations omitted).

There are other significant distinctions, as well. It was important to our decision in *Howard* that the life sentence imposed by the district court was far longer than the sentence requested by the government. *Howard*, 773 F.3d at 533–35. Here, we have the reverse situation: The sentence imposed by the district court is, to be sure, longer than the Guidelines range, but it also is far *shorter* than the 262 to 327 months recommended by the government. And finally, while we fully appreciate both the total length of the 123-month sentence in this case and the degree of the district court's deviation from the Guidelines on Count One, Nance's sentence remains substantially more modest than the life sentence we considered in *Howard*. We routinely uphold as substantively reasonable larger deviations producing longer sentences than this one. *See, e.g.*, *United States v. Myers*, 589 F.3d 117, 120–23, 125–27 (4th Cir. 2009) (affirming an upward departure from 121 months to 360 months based on three stale convictions); *United States v. Lawrence*, 349 F.3d 724, 727 (4th Cir. 2003) (affirming upward departure from 96 to 262 months based in part on a defendant's "extensive juvenile record"). Of course, every case is different and every sentence must be justified on its own facts. But the sentence here is not so obviously outside the norm that it necessarily raises concerns about whether the district court has "failed in its effort to comply with the aims of sentencing prescribed by § 3553(a)(2)." *Howard*, 773 F.3d at 535.

21

Whether or not we would impose the same sentence as the district court is not the question before us. *See Gall*, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."). Mindful of our deferential standard of review and considering the totality of the circumstances, we conclude that the district court did not abuse its discretion in finding that Nance's significant criminal history and potential to recidivate warranted a significant upward variance.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

GREGORY, Chief Judge, concurring:

As the majority opinion notes, enhancing Nance's sentence was initially raised in Nance's Presentence Investigation Report, in the context of a departure. The district court referred to the enhancement to Nance's sentence as both a variance and a departure; but as the majority explains, under this Court's precedent, we can affirm the sentence if either ground is proper. I concur in affirming Nance's sentence as a variance because the district court considered his conduct in prison and after release in weighing the § 3553 sentencing factors. I write, however, to emphasize the significance of Nance's argument regarding delayed brain development in the context of a departure based on an extensive youthful criminal history.

At sentencing, Nance's counsel argued that Nance's convictions should not be the driving factor for his sentence because the frontal lobe is not fully developed until the age of twenty-five, and that Nance's most recent violent criminal convictions occurred when he was twenty. Indeed, the frontal lobe is one of the last areas of the brain to develop, well into the twenties. Sarah B. Johnson, Robert W. Blum & Jay N. Giedd, *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, Journal of Adolescent Health, 45 J. Adolescent Health 216 (2009). This part of the brain is responsible for important functions such as "planning, organizing information, and thinking about possible consequences of action." Elizabeth S. Scott & Thomas Grisso, *Developmental Incompetence, Due Process, and Juvenile Justice Policy*, 83 N.C. L. Rev. 793, 812 (2005).

There are limited grounds that permit a district court to depart from the specified guidelines range, one being a defendant's criminal history. U.S.S.G. § 4A1.3(a) (allowing for a departure if the defendant's calculated criminal history category underrepresents the seriousness of the defendant's criminal history or there is a likelihood the defendant will commit other crimes). For an upward departure to be procedurally proper—where the primary reason for the enhancement is the defendant's youthful criminal history—the record must demonstrate the district court considered the mitigating argument of diminished culpability due to an undeveloped frontal lobe in determining whether the calculated criminal history does "underrepresent" the seriousness of the defendant's criminal history.