**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4357

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICKY DEWAYNE JOHNSON,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Margaret B. Seymour, Senior District Judge.  (2:18-cr-00695-MBS-1)

Argued:  December 7, 2023                    Decided:  January 30, 2024

Before AGEE and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Agee and Judge Floyd joined.

**ARGUED:**   Charles William Cochran, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant.  Elle E. Klein, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Corey F. Ellis, United States Attorney, Columbia, South Carolina, Andrew R. de Holl, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

Ricky Dewayne Johnson pled guilty to assaulting a federal officer with a deadly weapon and to possessing a firearm as a felon. Under the Guidelines, he received the statutorily authorized maximum sentence of 360 months.

On appeal, Johnson asserts that his sentence is procedurally unreasonable because the district court failed to consider fully his non-frivolous arguments for a downward variance. The record, however, proves otherwise. The district court heard Johnson's arguments, engaged with Johnson's counsel, required Johnson to complete certain release conditions as a result of his arguments and made a recommendation to the Bureau of Prisons based on the same. But it still declined to vary the sentence downward. In so doing, the court acted within its discretion. We therefore affirm the district court's judgment.

I.

After being charged by a multicount superseding indictment, Johnson pled guilty to two counts through a plea agreement. Johnson first pled guilty to assaulting two U.S. Marshals with a dangerous weapon, which he brandished in violation of 18 U.S.C. § 111(a)(1) and (b). Johnson also pled guilty to felon in possession in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). The plea agreement informed Johnson that, with regard to both counts, the Sentencing Guidelines range was 360 months to life, but the statutorily authorized maximum sentence was the bottom of that range, 360 months.

Ahead of sentencing, Johnson's counsel moved for a downward variance, requesting a sentence of fifteen years, half of the statutory maximum. The motion made

2

three points. First, Johnson argued that, at the time of the offense, he had been unable to afford his mental health medication for three to four weeks, was suffering from schizophrenia and post-traumatic stress disorder and was abusing methamphetamine. Second, Johnson argued that his troubled upbringing contributed to his PTSD, including witnessing his cousin's fatal car accident and suffering an injury in his own car accident, the latter of which led to his use and abuse of opioids. Finally, Johnson pointed to his behavior while in prison, including his regular medication use, mental health treatment, family support and weekly Bible study.

But throughout the motion, Johnson's counsel pointed to Johnson's severe mental health problems as a primary basis for mitigation. *See* J.A. 59 ("He suffers from schizophrenia and PTSD."); J.A. 61 (Johnson requested "he be placed at FCI Butner so that he can receive more intensive mental health treatment."); J.A. 62 (Johnson asked for a lesser sentence because 360 months "would not properly take into account the mental health issues which have undoubtedly been a primary factor."); J.A. 62 (Johnson requested 15 years because "it would take into account the significant mitigating factors which stem from Mr. Johnson's lifetime struggle with mental health issues and the efforts he has made over the 39 months since his arrest. Mr. Johnson has a loving family to return to and a life to be lived with proper mental health.").

At the sentencing hearing, Johnson's counsel argued for a downward variance based on the reasons in the motion. Johnson's counsel repeated that Johnson had been unable to afford his mental health medication at the time of the offense due to his indigency—which he needed to prevent "potentially psychotic episodes, from schizophrenia all the way down

to extremely severe anxiety and paranoia." J.A. 67. The court questioned this argument, inquiring why Johnson could not afford the medication and how it was usually made available to him. Johnson's counsel responded that he "simply did not have the money." J.A. 67. This, according to Johnson's counsel, alongside the drugs he was abusing, resulted in psychotic or delusional behavior on the day of the offense. His counsel also stated that from Johnson's "perspective," his actions on the day of the offense were "an extremely impulsive act," after which he "fell asleep and [was] then just wondering [sic] around after he woke up, and the [M]arshals happened to see him."[1] J.A. 68.

Johnson's counsel outlined his past struggles that "exacerbated both his mental health issues and his emotional development," including witnessing his cousin's death in a car crash, as well as the head injury he suffered in a separate car accident that led to his opioid addiction. J.A. 68. Johnson's counsel asserted linkages between head injuries and "impulsive, erratic, [and] suicidal behavior." J.A. 69. His counsel also stated that Johnson "had all of the earmarks of all the bad things that can happen to a kid to cause this kind of trouble later in life," including a "serious head injury, opioid prescription, access to drugs and alcohol at a young age, and an abusive alcoholic father, *all being under the umbrella of him being born with and having naturally a mental illness*." J.A. 69 (emphasis added).

---

[1] Johnson's counsel also sought to partially justify Johnson's flight reaction to the U.S. Marshals pursuing him by stating, "I think the [M]arshals were in plain clothes." J.A. 68. But that argument was later contradicted: one of the Marshals attending the hearing stated that they "were marked that day wearing bulletproof vests, U.S. Marshals' gear, and patches that identified [them] as law enforcement." J.A. 82–83.

4

Indeed, Johnson's counsel stated that it was an "astounding background[]" because of the "confluence of all the bad things that can happen to somebody." J.A. 69.

Johnson's counsel then outlined Johnson's positive experience with and reaction to receiving a mental health evaluation and medication while incarcerated. After that, his counsel justified requesting a fifteen-year downward variance (from the thirty-year Guidelines sentence) because of Johnson's "background, what he's gone through, and the interactions that [counsel] had with him over the last three years, and the talks [counsel has] had with his mother." J.A. 71–72.

The district court next heard from Johnson's mother, then Johnson himself. Johnson expressed remorse and pointed to "addiction" along with his "mental health conditions" as "play[ing] a big part in [his] decision making at the time." J.A. 75. Finally, the court heard from the government, which recognized the victims, reviewed key facts and urged the court to adopt the 360-month Guidelines sentence.

The district court then reviewed Johnson's charged offenses and early criminal history. The court noted that Johnson "has serious mental health issues that have been compounded by illicit drug use." J.A. 85. After "consider[ing] the advisory sentencing guidelines and also consider[ing] the relevant statutory sentencing factors [in § 3553(a)]," the court sentenced Johnson to a term of 360-months imprisonment. J.A. 85–86. The court noted that it would "make a recommendation to the Bureau of Prisons that [Johnson] be incarcerated at the Butner facility so that he can get needed treatment." J.A. 86. And "[u]pon release from imprisonment," the court also imposed a condition that Johnson "participate in a program and comply with mental health counseling and/or treatment as

5

deemed necessary." J.A. 86–87. That condition was imposed because Johnson "has a history of multiple mental health diagnoses, and compliance with mental health treatment may reduce the risk of recidivism." J.A. 87. Johnson was also to "contribute to the cost of any treatments" and drug testing. J.A. 87.

This timely appeal followed, with Johnson arguing that his sentence was procedurally unreasonable because the district court failed to address his nonfrivolous arguments for a downward variance.

## II.

### A.

We review a criminal sentence for procedural reasonableness "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). A sentencing court must state "the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), and "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing," *Gall*, 552 U.S. at 50. "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances," and the law leaves much to "the judge's own professional judgment." *Rita v. United States*, 551 U.S. 338, 356 (2007). The district court "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.*

When a defendant presents non-frivolous reasons for imposing a different sentence, the district court "must address or consider" them and explain why it has rejected them.

6

*United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). The explanation is sufficient "if it, although somewhat briefly, outlines the defendant's particular history and characteristics not merely in passing or after the fact, but as part of its analysis of the statutory factors and in response to defense counsel's arguments for a downward departure." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) (cleaned up). District courts need not spell out their responses to defendants' arguments where context makes them clear. *Id.* at 520–21. But the context must make it "patently obvious that the district court found [the defendant's] arguments to be unpersuasive." *Id.* at 521 (cleaned up).

"[I]n a routine case, where the district court imposes a within-Guidelines sentence, the explanation need not be elaborate or lengthy." *United States v. Arbaugh*, 951 F.3d 167, 174–75 (4th Cir. 2020) (internal quotation marks omitted). When a district court has fully addressed the defendant's "central thesis" during sentencing, it need not "address separately each supporting data point marshalled" for a downward variance. *United States v. Nance*, 957 F.3d 204, 214 (4th Cir. 2020). As for our role, "[a]ppellate review is not a game of 'Gotcha!' where we tally up the number of distinguishable arguments a defendant mentioned in the district court and then comb the sentencing transcript for proof the district court mentioned each one by name." *United States v. Powers*, 40 F.4th 129, 137 (4th Cir. 2022).

## B.

On appeal, Johnson advances two arguments. First, he claims that the district court failed to adequately engage with his primary mitigation argument—that his severe mental health issues combined with his drug addiction warranted a downward variance in his

7

sentence. Second, as explained in his opening brief, Johnson claims that the district court also failed to address three other mitigation arguments. Neither is persuasive.

1.

First, Johnson complains that the district court failed to adequately consider his main mitigation argument, that his severe mental health and drug addiction issues counsel for a downward variance. But the district court addressed this argument throughout the sentencing hearing and in the individualized sentence handed down. When Johnson's counsel explained that Johnson had stopped taking necessary mental health medication, the district court directly engaged with him, probing why Johnson could not afford the medication and if it was normally provided to him. Such questions in the record show that the district court considered the argument. *See Nance*, 957 F.3d at 213 ("Where a sentencing court hears a defendant's arguments and engages with them at a hearing, we may infer from that discussion that specific attention has been given to those arguments."); *see also Blue*, 877 F.3d at 521 ("[R]eviewing courts may . . . infer that a sentencing court gave specific attention to a defendant's argument for a downward departure if the sentencing court engages counsel in a discussion about that argument.").

Later in the sentencing hearing, the district court explicitly acknowledged Johnson's argument when handing down the sentence. In its consideration of the relevant statutory sentencing factors, the court directly stated that Johnson had "serious mental health issues that have been compounded by illicit drug use." J.A. 85. Though admittedly brief, we have said that "[t]he sentencing court's explanation [of a sentence] need not be extensive." *United States v. Harris*, 890 F.3d 480, 485 (4th Cir. 2018).

8

Finally, the sentence imposed by the district court makes clear that the court considered and rejected Johnson's mitigation arguments. First, the district court stated it would "make a recommendation to the Bureau of Prisons that [Johnson] be incarcerated at the Butner facility so that he can get needed treatment." J.A. 86. And second, as part of the conditions of supervised release, the district court said that Johnson "shall participate in a program and comply with mental health counseling and/or treatment as deemed necessary by the United States probation officer." J.A. 87. Indeed, the court noted that "[t]his condition is imposed as the defendant has a history of multiple mental health diagnoses, and compliance with mental health treatment may reduce the risk of recidivism." J.A. 87. The court ordered that Johnson "contribute to the cost of any treatments" for drug abuse or mental health. J.A. 87. This relevant recommendation alongside tailored release conditions show that the district court considered and rejected Johnson's mitigation argument. *See United States v. Fowler*, 58 F.4th 142, 155 (4th Cir. 2023); *see also Nance*, 957 F.3d at 213 (reasoning that the district court's recommendation for a drug treatment problem "makes clear that it considered [the defendant's] struggles with drug addiction); *Blue*, 877 F.3d at 521 ("[R]eviewing courts may infer such consideration where the sentence imposed is explicitly tailored to address a defendant's individual characteristics, such as requiring substance abuse treatment for defendants who struggle with drug and alcohol abuse issues.").

These features—engaging with Johnson's counsel through questioning, acknowledging Johnson's serious mental health and drug issues, imposing tailored release conditions and recommending Johnson be housed at FCI Butner—make it "patently

9

obvious" that the court considered and rejected Johnson's arguments. *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). While "[w]e acknowledge that the [district court] might have said more," *Rita*, 551 U.S. at 359, this was "not a case where the district court passively heard the parties' arguments and then seemed to ignore them." *Montes-Pineda*, 445 F.3d at 381. We take no exception to this procedurally reasonable sentence.

2.

Second, Johnson complains that the district court ignored "several" other reasons for "a sentence below the Guideline range," including (i) his PTSD "possibly as a result of traumatic events in [Johnson's] childhood," (ii) "a head injury" "which potentially led to [opioid] abuse later in life," and (iii) "reform efforts" during his incarceration. Op. Br. 4; *see also* Op. Br. 13–14 (describing several *separate* mitigation arguments). But this argument runs into factual and legal problems.

Factually, Johnson's assertion of several *separate* mitigation arguments ignored by the district court is unsupported by the record. In both Johnson's variance motion and his counsel's argument at the sentencing hearing, Johnson's mitigation arguments were connected to and interwoven with his serious mental health and drug addiction issues. The motion requested a downward variance because 360-months "would not properly take into account the *mental health issues which have undoubtedly been a primary factor* in Mr. Johnson's criminal history." J.A. 62 (emphasis added). The motion also requests a reduced sentence to "take into account the significant mitigating factors which stem from Mr. Johnson's lifetime struggle with *severe mental health issues* and the efforts he has made

10

over the 39 months since the arrest." J.A. 62 (emphasis added). Finally, the motion noted that "Mr. Johnson has a loving family to return to and a *life to be lived with proper mental health care*." J.A. 62 (emphasis added).

During the sentencing hearing, Johnson's counsel began by explaining that Johnson could not afford his "very serious mental health medication," leading to "potentially psychotic episodes, from schizophrenia all the way down to extremely severe anxiety and paranoia from his PTSD." J.A. 67. That lack of medication was "compounded by drug use" because "the combination of having potentially psychotic or delusional mental health where you're hearing things and seeing things and then also ingesting methamphetamine . . . led to the horrible things that happened." J.A. 67. When Johnson's counsel brought up traumatic events from Johnson's childhood as "just as important" a reason for mitigation, he still connected them to Johnson's mental health problems because they "exacerbated both his mental health issues and his emotional development." J.A. 68. After outlining Johnson's opioid and drug abuse and positive experience with therapy, his counsel stated, "[I]f he were to go to prison for 15 years, that's 15 years of sobriety, and that's 15 years of hopefully receiving mental health medication and therapy." J.A. 73. Finally, Johnson's counsel also used language that tied and connected these various arguments to Johnson's mental health and drug use. *See* J.A. 69 ("[Y]ou've got serious head injury, opioid prescription, access to drugs and alcohol at a young age, and an abusive alcoholic father, *all being under the umbrella* of him being born with and having naturally a mental illness that can lead to psychotic breaks, psychosis, auditory and visual hallucinations.") (emphasis added); *see also id.* ("This is one of the most astounding

11

backgrounds that I've heard from a client in terms of just a *confluence of all the bad things that can happen to somebody that can lead to this kind of behavior.*") (emphasis added).[2]

Rather than distinct and separate, Johnson's arguments for mitigation were connected and interwoven. Based on the record, the district court did not ignore multiple separate arguments from Johnson, because that is not how they were presented. Johnson's counsel conceded as much at oral argument.

Legally, our precedent holds that if the district court appropriately addressed the defendant's central thesis, it need not "address separately each supporting data point marshalled on its behalf." *Nance*, 957 F.3d at 214. Each of the issues Johnson points to in his brief support his foundational mitigation argument, that his issues with mental health and drug abuse favor a downward variance. And as explained above, the court adequately addressed this central thesis.

---

[2] This case is unlike *United States v. Blue*, where the defendant argued eight *distinct and separate* arguments for a variance, that "he was influenced by his older brothers, who pressured him to commit the previous robbery offenses; he committed the instant offense to support his opiate addiction; he had successfully found employment and was a hard worker; he was a good father to his child and his wife's children from a previous relationship; his co-defendant received a [lesser sentence]; the career offender Guidelines range was overly harsh and failed to deter offenders; he accepted responsibility for his conduct; and he attempted to provide substantial assistance in the prosecution of others, but his attempts were frustrated by factors outside of his control." 877 F.3d at 517. The court there held that the district court had only addressed two of the eight arguments. *Id.* at 519.

III.

For these reasons, the judgment of the district court is

*AFFIRMED.*