**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4007**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DEVON WILLIAMS,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:17-cr-00206-PJM-1)

Submitted: March 26, 2020                    Decided: August 7, 2020

Before AGEE, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland; A. Joshua Podoll, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant. Robert K. Hur, United States Attorney, Baltimore, Maryland, Hollis Raphael Weisman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Devon Williams pleaded guilty to assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6). Although the federal Sentencing Guidelines recommended a range of 33 to 41 months' imprisonment, the district court imposed a sentence of 72 months. On appeal, Williams argues that the district court violated his right to Due Process in considering his arrest record and otherwise imposed a sentence that was procedurally and substantively unreasonable. Finding no error, we affirm.

## I.

In March 2017, Williams was riding with his girlfriend along the Baltimore-Washington Parkway.[1] After a disagreement began, his girlfriend stopped the vehicle in the right lane of traffic, got out of the car, and crossed onto the median. Williams followed her and a struggle ensued. As his girlfriend bled and cried, Williams physically forced her back across the Parkway and into the vehicle.

Andrew Borene was also driving on the Parkway when he saw the altercation. Borene stopped his van on the shoulder, approached the vehicle that Williams was in, and spoke to the driver to ask if she was all right. Williams "yelled to the driver not to answer and to start the car," leading Borene to ask other drivers stopped on the Parkway to call 911. J.A. 41.

---

[1] The Parkway is a federal area maintained by the National Park Service and within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 7(3); *United States v. Smith*, 701 F.3d 1002, 1004 (4th Cir. 2012).

Williams then got out and assaulted Borene, "punching him with such force that [Borene's] orbital floor bone, which supports the eye, was broken, and . . . [Borene] suffered a concussion." *Id*. Williams continued the assault until another motorist stepped in to help subdue Williams. Borene was later hospitalized, and his injuries kept him from working for almost a year.

Williams pleaded guilty in federal court to assault resulting in serious bodily injury. *See* 18 U.S.C. § 113(a)(6) (outlawing "[a]ssault resulting in serious bodily injury" in "the special maritime and territorial jurisdiction of the United States"). Under his plea agreement, Williams and the government agreed to ask the district court to impose a sentence within the applicable Guidelines range and stipulated to the reasonableness of a within-Guidelines sentence. But Williams reserved the right to appeal his sentence "to the extent that it exceeds any sentence within the advisory guidelines range." J.A. 15.

In the Presentence Investigation Report ("PSR"), the probation officer calculated Williams's offense level as 18 and criminal history category as III, creating a Guidelines range of 33 to 41 months. The PSR also included Williams's 15 other adult convictions along with 12 adult arrests that did not lead to convictions. And it noted that Williams had pending charges for which he had failed to appear. Ultimately, the PSR recommended a middle-of-the-range sentence of 37 months' imprisonment.

Before sentencing, the government filed a sentencing memorandum asking for Williams to be sentenced to 41 months. Defense counsel also sent a letter to the district court, summarizing Williams's plea agreement, the March 2017 assault, and Williams's background. The letter ended by requesting a 36-month sentence which, according to

3

defense counsel, "represent[ed] a significant sanction that accounts for the injuries of the victim, Mr. Williams['s] criminal history, and the positive factors reflected in his personal history and characteristics." J.A. 109.

At sentencing, the district court adopted the PSR's calculation of the Guidelines range, to which neither party objected. The court then heard from Borene and his wife, who shared how the assault had impacted them, costing Borene "months of [his] memory, ten months of [his] work, and maybe years off [his] life." J.A. 114.

Next, the government told the court that the parties had filed sentencing memoranda ahead of sentencing, which the judge said he had "looked at." J.A. 121. The government then advocated for a sentence of 41 months. It emphasized how the defendant's criminal history reflected his recidivism, to which the judge remarked: "[H]e doesn't go to jail. Very short time. I was astounded. . . . [I]t's really one of the failings of this system." J.A. 122. To which the government responded that "the only way to achieve the sentencing guideline goals of protecting the public and punishing this defendant for what he did is to sentence him to the maximum sentence under the guidelines." *Id.* Again, the judge intervened and pointed out that he could sentence above the Guidelines range since the statutory maximum was 10 years' imprisonment.

Defense counsel then argued that the recommended range was sufficient "given some of the situational factors involved." J.A. 130. One factor was that there were "certainly other consequences that [were] going to flow as a result of the Court's sentence." J.A. 132. As for Williams's criminal history, defense counsel noted that many of Williams's convictions were for driving offenses and that the district court had "to respect

4

the fact that the state courts treated them the way that they treated them." J.A. 131. But the judge replied, "[T]hat is not a proposition that I adhere to," and explained why:

> The state courts here, Prince George's County in particular, is notoriously bad in punishing people for their crimes. Cases get nolle prossed because witnesses don't show up. This man has a long, very poor record, and I don't walk away from that. And when they give people time, as they did with him, and give him a day or suspend 90 days, I don't give particular credence to the sensibility of the judges in Prince George's County by and large. I am going to be very frank with you about that. . . . I see this all too often where people like Mr. Williams come in and out of the system and I think perhaps come to the conclusion, well, I will do my time, . . . I won't spend much time in jail, that's the way it will be. It doesn't happen that way in this court.

J.A. 131−32.

Highlighting portions of the PSR about Williams's background, defense counsel also pointed out that Williams's "family is here to support him" and has been "a good, solid, stable, supporting family." J.A. 132, 133. In particular, Williams's father taught him about landscaping work and "helped him invest in a landscaping business," which is how defense counsel "hope[d] [Williams] would be able to work to pay what he can pay" in terms of restitution. J.A. 133. And defense counsel remarked that Williams "is committed, as he indicated in his letter, to repaying whatever he can repay." *Id.*

Next, Williams addressed the court. He accepted responsibility for the offense, apologized to Borene, agreed to pay restitution, and intended to "get back to [his] landscaping business and get back to being productive." J.A. 137.

The district court then explained what the Sentencing Guidelines were so that the defendant and those in the courtroom—including Williams's family and friends and the victim and his wife—understood "what's going on." *Id.* The district court also went

5

through the § 3553(a) factors, discussing "the nature and circumstances of the offense," J.A. 139, and "the criminal history" and characteristics of the defendant, J.A. 138, the need to deter others and the defendant, as well as the need to protect the public from further crimes of the defendant, J.A. 141. And the court discussed the need for restitution and correctional treatment for the defendant. J.A. 143−44.

After reasoning through these factors, the district court imposed a sentence of 72 months' imprisonment and 3 years of supervised release. The court explained why it went beyond the suggested Guidelines range:

> I am going to sentence you to six years in custody. I am going beyond the guidelines, which is 41 months, and give you six years. It's not ten [years, the statutory maximum]. . . . I think that will pay much better service to the victims in this case, to the community, which I think has reason to be concerned about you when you are out at large, and just keeps you out of circulation in the meantime. And that's where I think you are. You will get credit for time served.

J.A. 142.

Further reiterating its reasoning in imposing the sentence, the district court stated: "[B]ecause of the extreme behavior that I see in this case and because of the serious victim impact that I see in this case, I think that a sentence above the sentencing guidelines is justified, so the 72 months with credit for time served." J.A. 144.

After sentencing, the district court completed a Statement of Reasons form noting that it varied from the Guidelines range because of the "Extreme Conduct" and the "Victim Impact." S.J.A. 11 (under seal). Williams timely appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a).

6

## II.

## A.

Williams first argues that the district court violated his constitutional due process right under the Fifth Amendment by sentencing him based on speculation about Williams's criminal history. See U.S. CONST. amend. V ("nor be deprived of life, liberty, or property, without due process of law"). "Due process requires that sentencing courts rely only on evidence with some minimal level of reliability . . . and the Guidelines themselves demand that the evidence used have 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Powell*, 650 F.3d 388, 393−94 (4th Cir. 2011) (quoting U.S.S.G. § 6A1.3(a)). The Guidelines allow for an upward departure based on "reliable information[,] indicat[ing] that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). But the defendant's "prior arrest record itself shall not be considered for purposes of an upward departure." *Id.* § 4A1.3(a)(3). Instead, "a district court 'must rely on the facts underlying the arrests.'" *United States v. Dixon*, 318 F.3d 585, 591 (4th Cir. 2003) (quoting *United States v. Fuller*, 15 F.3d 646, 651 (7th Cir. 1994)).[2]

---

[2] Section 4A1.3 explains when *departures* under the Guidelines, not variances from the Guidelines, may be warranted. Both are "sentencing options available to a sentencing court." *United States v. Rivera-Santa*, 668 F.3d 95, 100 n.6 (4th Cir. 2012). We have yet to decide whether § 4A1.3(a)(3)'s prohibition on considering a defendant's prior arrest record applies to a variance from the Guidelines. *See United States v. Berry*, 553 F.3d 273, 284 (3d Cir. 2009) (holding that "a bare arrest record" alone cannot support an upward departure or variance "in the absence of adequate proof of criminal activity"). Since we (Continued)

Williams alleges that the judge did not sentence him based on reliable information. Instead, the judge "speculated that '[m]any cases' listed in Mr. Williams's PSR 'never got prosecuted, nolle prosed' because 'the witnesses didn't show up,'" Appellant's Opening Br. 10 (quoting J.A. 140), and he "assumed that 'breakdowns . . . in the state court system,' as opposed to the defendant['s] innocence, was the reason that the authorities did not pursue the relevant charges." *Id.* at 11 (quoting *Berry*, 553 F.3d at 277).

Since Williams did not raise this issue below, our review is for plain error. *United States v. White*, 405 F.3d 208, 215 (4th Cir. 2005). The "defendant must show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights." *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). To be plain, the error must be "'clear' or, equivalently, 'obvious.'" *Olano*, 507 U.S. at 734. And "[i]n the sentencing context, an error affects substantial rights if, absent the error, a different sentence might have been imposed." *United States v. Slade*, 631 F.3d 185, 190 (4th Cir. 2011) (internal citations omitted). Exerting our discretion, we will "correct such an error . . . 'only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Lockhart*, 947 F.3d at 191 (quoting *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009)).

Williams's argument fails at the first step: we find no error. The evidence does not show that the judge sentenced the defendant based on unreliable information. When

---

conclude that the court below did not rely on Williams's arrest record, we need not address that question today.

defense counsel argued that the court should "respect the fact that the state courts treated [the defendant's prior charges] the way that they treated them," the judge responded: "This man has a long, very poor record, and I don't walk away from that." J.A. 131. According to the PSR, Williams had 15 prior convictions that spanned nearly a decade, and, although the PSR listed the prior arrests that did not lead to convictions, "there is no suggestion in the record that the district court relied on th[ose] charges." *United States v. Spain*, 184 F. App'x 292, 293 (4th Cir. 2006). Instead, the judge sentenced Williams above the suggested Guidelines range based on "the extreme behavior," "the serious victim impact," and the danger Williams posed when he was "out at large." J.A. 142, 144. These were all legitimate reasons for imposing an above-Guidelines sentence. *See* 18 U.S.C. § 3553(a)(1)-(2).

## B.

Williams also argues that his sentence is procedurally and substantively unreasonable. We "'review[] all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.'" *United States v. Torres-Reyes*, 952 F.3d 147, 151 (4th Cir. 2020) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Generally, our review is of the sentence's "procedural and substantive reasonableness." *Id.*

## 1.

In determining whether a sentence is procedurally reasonable, "this Court considers whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18

U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). The district court must "'place on the record an 'individualized assessment' based on the particular facts of the case before it.'" *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (quoting *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010)). This "means that the district court must 'consider the defendant's nonfrivolous arguments for a downward departure, impose an individualized sentence based on the characteristics of the defendant and the facts of the case, and explain the sentence chosen.'" *Torres-Reyes*, 952 F.3d at 151 (quoting *Blue*, 877 F.3d at 518). So "[a] district court's analysis thus begins with the facts and arguments presented to it," and the court "'must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why [it] has rejected those arguments.'" *Id.* (quoting *Ross*, 912 F.3d at 744). And although "'it is sometimes possible to discern a sentencing court's rationale from the context surrounding its decision,' the reviewing court 'may not guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence.'" *Id.* (quoting *Ross*, 912 F.3d at 745).

Williams contends that he made ten non-frivolous arguments for a middle-of-the-Guidelines-range sentence, and the district court failed to address seven of them. On appeal, he points to "seven mitigation arguments":

1. The defendant's "guideline range already had been 'doubled based on the seriousness of the injuries.'" Appellant's Opening Br. 15 (quoting J.A. 107).

2. The defendant's "pretrial incarceration was 'purely punitive' and did not address any other goals of sentencing." *Id.* (quoting J.A. 108).

10

3.  The defendant "voluntarily committed 'to paying a significant amount in restitution, covering the victim's uncovered medical expenses and lost wages.'" *Id.* (quoting J.A. 107).

4.  The defendant "was 'willing[] to participate in counseling and treatment.'" *Id.* (quoting J.A. 108).

5.  The defendant "did not intend to cause the victim permanent injury." *Id.* (citing J.A. 107).

6.  The defendant "'demonstrated willingness to work' in his landscaping business." *Id.* (quoting J.A. 108).

7.  "Collateral consequences in other actions would inevitably 'flow as a result of the Court's sentence.'" *Id.* (quoting J.A. 132).

The seventh "mitigation argument" was raised at the sentencing hearing. The first six statements were in a letter that defense counsel sent to the district court a few days before sentencing. If these seven statements were indeed "non-frivolous arguments," then it was the district court's "obligation to specifically address" them. *Ross*, 912 F.3d at 745. For having once raised a ground for a variance, the defendant need not object, reiterate, or call the court's attention to that ground again. All that is required is that counsel "present[]" non-frivolous arguments "for imposing a different sentence," *id.* at 744, which may occur before or during a sentencing hearing, *see Blue*, 877 F.3d at 520 (noting that Blue presented grounds for a variance by "submitt[ing] three briefs to the sentencing court and [by] rais[ing] the same arguments orally").

On appeal, we must determine whether the defendant presented arguments in support of a lower sentence. And the arguments must have been raised before or during the sentencing hearing. Then, we must analyze whether the arguments were non-frivolous.

11

Finally, we must assess whether the district court "address[ed] or consider[ed]" those arguments. *Ross*, 912 F.3d at 744.

As for the first three statements, they were not arguments for a lower sentence raised before or during sentencing. Defense counsel's letter summarized Williams's case over the course of several paragraphs, describing, as a matter of fact, how he pleaded guilty, accepted responsibility under a plea agreement, and "agreed to a **7 level increase** in his base offense level." J.A. 107. And the letter provided two more facts: "Absent the 7 level increase, the advisory guidelines range (after acceptance) is 15-21 months. The potential penalty is doubled based on the seriousness of the injuries." *Id.* The letter also included mixed statements of fact and opinion that Williams "committed to paying a *significant* amount of restitution," J.A. 107 (emphasis added), and his "incarceration has been *purely* punitive, as the D.C. Jail offers no programs for inmates and the conditions there are difficult." J.A. 108 (emphasis added).[3] These statements merely described the background of Williams's case, setting forth the procedural posture, the contents of the plea agreement, and the conditions of his incarceration. Although on appeal the defendant now attempts to recharacterize this background information as arguments for a lower sentence in his appellate brief, the information was not presented to the district court as such. *See, e.g.*, Appellant's Opening Br. 15 (connecting, for the first time on appeal, the payment of restitution to the sentence Williams should receive).

---

[3] The district court did discuss Williams's pretrial detention in announcing his sentence. *See* J.A. 145. And as we explain below, the judge considered Williams's commitment to working so that he could pay restitution. *See* J.A. 140−41.

12

Moreover, these three statements were not transformed into arguments by defense counsel's boilerplate sentence at the end of the letter. The letter ended by stating, "The requested sentence represents a significant sanction that accounts for the injuries of the victim, Mr. Williams['s] criminal history, and the positive factors reflected in his personal history and characteristics." J.A. 109. But the letter did not identify "the positive factors" that warranted imposing a bottom-of-the-Guidelines sentence. *Id.* And the factual background in these first three statements does not readily fit as "personal history and characteristics." *Id.* Where Williams's counsel did elaborate on Williams's personal history and characteristics at the sentencing hearing, we find the judge to have adequately addressed those arguments, as we discuss below. *See, e.g.*, J.A. 140–41 (noting Williams's "nice upbringing"); J.A. 139–40 (considering Williams's remorse for the offense). Although a defendant can raise a ground for a variance *before or during* the sentencing hearing, we do not require judges to address grounds properly raised only on appeal. "It would be wholly contrary to the Supreme Court's conferral of discretion on trial courts if we were to play a game of 'Gotcha!' with respect to the sentencing transcripts we review." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 218 (4th Cir. 2010). We refuse to play that game here.[4]

---

[4] And we refuse to do so in other contexts. For example, we adhere to "the oft-cited 'rule that contentions not raised in the argument section of the opening brief are abandoned.'" *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013) (quoting *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004)); *see* Fed. R. App. P. 28(a)(8) (requiring that the appellant's brief contain an "argument" section with the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). So if an appellant mentions certain facts in the background (Continued)

As for the remaining statements, they were presented as arguments for a lower sentence before or during the sentencing hearing. Defense counsel's letter sent before the sentencing said that Williams had "demonstrated willingness to work" in starting a landscaping business with the support of his parents. J.A. 108. It also pointed out that the defendant "did not intend to cause the victim permanent injury." J.A. 107. And the letter argued that the defendant's "prior convictions highlight the need for a sentence that punishes him for his conduct but that also addresses the need for substance abuse treatment and counseling," which the defendant was "willing to participate in." J.A. 108. Then, at sentencing, defense counsel made another argument that "there [are] certainly other consequences that are going to flow as a result of the Court's sentence. I don't think the Court needs to increase its sentence because those consequences are coming regardless of the length of this Court's sentence." J.A. 132.

The district court considered these four arguments. After explaining how the Guidelines range was calculated, the court "took account of personal characteristics that the defense had identified as mitigating." *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020). As for Williams's willingness to work with the support of his parents, the court was not convinced that this warranted a shorter sentence, saying, "You have torn a family apart. . . . You are someone who had the benefit of a fairly good family, from what I can read, and they are here to support you, but that doesn't justify tearing somebody else's life apart." J.A. 140. The court also mentioned that it had "read" defense counsel's letter,

---

but "fails to provide a clear argument on why or how the district court erred," we consider that issue "waived." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 153 n.6 (4th Cir. 2012).

which repeated Williams's argument that he had the support of his family. *Id.* Later during sentencing, the court again addressed the argument about the defendant's family support and his willingness to work in the community:

> [Y]ou apparently had a nice upbringing, and yet, notwithstanding that, you have gone out and created all sorts of havoc in the community. . . . I don't know what you are capable of, you and your long history. You still would be a menace on the street in my opinion. Even though your family loves you and supports you, I assume, the rest of the community should walk in fear with you because we don't know what you are capable of.

J.A. 140−41.

Likewise, the court's decision to impose conditions prohibiting Williams from "us[ing] or possess[ing] alcohol," requiring him to "participate in a program aimed at addressing specific interpersonal and social area skills," and requiring him to "submit to a substance abuse testing program" makes clear that it considered Williams's willingness to undergo counseling and treatment. J.A. 143; *see also Nance*, 957 F.3d at 213 (finding that the district court's recommendation that the defendant participate in "the most intensive substance treatment program" showed that it had considered the defendant's struggle with drugs) (internal citations omitted). In addition, when weighing the defendant's remorse against the seriousness of the offense, the district court also specifically addressed the argument that Williams had not intended to cause harm. The court said, "This is about as serious an assault as can be seen. It is a very aggravated circumstance. And when you look at the impact of what you have done with his life, *you say you are sorry¸* and that's a beginning[;] it doesn't really, however, come close to making up for the havoc that you

15

have caused in a family." J.A. 139−40 (emphasis added). Again, the judge was not persuaded by this mitigation argument.

Lastly, the court specifically addressed the argument that the defendant should receive a lower sentence because of the collateral consequences that would "flow as a result of the Court's sentence." J.A. 132. In explaining Williams's sentence, the court asked him, "How do I deter others from doing the kind of thing you do or did here . . . am I gentle with you in a circumstance like that? What am I telling the other people who do that? I am not telling them very much if I am too soft on you." J.A. 141. And the court gave its opinion that certain state courts are "notoriously bad in punishing people for their crimes," reflecting that potential consequences might not result if the judge imposed a bottom-of-the-range sentence. J.A. 131. Since the court "specifically address[ed]" the defendant's four non-frivolous arguments, his sentence is procedurally reasonable. *Ross*, 912 F.3d at 745.

## 2.

Having found Williams's sentence procedurally sound, we next turn to the question of substantive reasonableness. We review the substantive reasonableness of a defendant's sentence for abuse-of-discretion. *See Gall*, 552 U.S. at 51. To determine whether a sentence is substantively reasonable, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* "Where, as here, the sentence is outside the advisory Guidelines range, we must consider whether the sentencing court acted reasonably both with respect to its decision to impose

16

such a sentence and with respect to the extent of the divergence from the sentencing range." *Nance*, 957 F.3d at 215 (internal citations omitted).

We recognize that "district courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors." *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011). Just because a "variance sentence deviates significantly from the advisory Guidelines range . . . does not alone render it presumptively unreasonable." *United States v. Rivera-Santana*, 668 F.3d 95, 106 (4th Cir. 2012). Instead, we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

Here, the district court did not impose a substantively unreasonable sentence. It varied above the high-end of the Guidelines range by 31 months. But the court acted reasonably in doing so, explaining that this sentence would "pay much better service to the victims in this case, [and] to the community, which [the court thought] has reason to be concerned about [the defendant] when [he is] out at large." J.A. 142. In assessing the nature and circumstances of the offense, the district court found that this was no "simple assault. This [was] an assault which absolutely was without justification. . . . [Williams] came in, based on the history of anger, frankly, and lack of control, and [he] just wound up and clocked this guy beyond recognition." J.A. 139.

It is the district court—not appellate courts—who "has access to, and greater familiarity with, the individual case and the individual defendant before [it]." *Rita v. United States*, 551 U.S. 338, 357 (2007). And we must "give due deference," *Gall*, 552

17

U.S. at 51, to the court's decision that Williams's "extreme behavior" and "the serious victim impact" justified the extent of the variance. J.A. 144.

*          *          *

We find no error in Williams's sentencing. Thus, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*