**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 23-4174**

—————————

UNITED STATES OF AMERICA,

> Plaintiff – Appellee,

> v.

WILLIAM ANTHONY DAVIS, JR.,

> Defendant – Appellant.

—————————

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Roderick Charles Young, District Judge.  (4:22-cr-00057-RCY-DEM-1)

—————————

Argued:  September 24, 2024                    Decided:  February 27, 2025

—————————

Before KING and RICHARDSON, Circuit Judges, and William L. OSTEEN, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

—————————

Affirmed by published opinion.  Judge Osteen wrote the opinion, in which Judge King and Judge Richardson joined.

—————————

**ARGUED:**  Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Peter Gail Osyf, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.  **ON BRIEF:**  Geremy C. Kamens, Federal Public Defender, Andrew W. Grindrod, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia; Anthony L. Pappas, Second Year Law Student, WILLIAM & MARY LAW SCHOOL, Williamsburg, Virginia, for Appellee.

OSTEEN, JR., District Judge:

William Davis Jr. pleaded guilty to being a felon in possession of a firearm after police arrested Davis for reckless driving and subsequently discovered a firearm hidden in his waistband while transporting him for booking in the back seat of a patrol car. At sentencing, the district court varied upward from a Sentencing Guidelines range of 21 to 27 months and imposed a sentence of 72 months. Davis appeals, arguing that the sentence is procedurally and substantively unreasonable. For the reasons that follow, we affirm.

I.

A.

On March 20, 2022, police officers observed Davis driving while using a handheld device and attempted to conduct a traffic stop. J.A. 40. Instead of stopping, Davis drove through a red light and crashed into another vehicle. *Id.* The officers arrested Davis for reckless driving and transported him for booking. *Id.*

During transport, Davis repeatedly complained about his handcuffs. S.J.A. 172. After officers adjusted Davis's handcuffs twice, he asked to have the handcuffs moved from his back to the front—a request the officers denied. When Davis continued to move around in the back seat, the officers became suspicious and asked him multiple times if he had anything illegal on his person. *Id.* Davis hesitated to answer each time but eventually confessed to having "a firearm hidden on his genitals." *Id.* The officers pulled over and located a loaded handgun in Davis's waistband. *Id.* Davis was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

2

B.

Davis eventually pleaded guilty to the felon-in-possession charge, for which the presentence report calculated his Sentencing Guidelines range as 57 to 71 months. This range was founded upon a base offense level of 24, calculated pursuant to a U.S.S.G. § 2k2.1(a)(2) enhancement for Davis's two prior felony convictions for controlled substance offenses. J.A. 83–95; S.J.A. 189. The first of those convictions resulted from Davis's distribution of Schedule I or II controlled substances on February 16, 2012, and March 1, 2012, while on probation. J.A. 176–77. The second of those convictions resulted from Davis's distribution of powder cocaine on July 20, 2012, again while on probation. J.A. 177–78.

Prior to sentencing, Davis filed a written objection to the § 2k2.1(a)(2) enhancement, relying upon *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022). *See* J.A. 83–89. After hearing arguments of counsel, the district court held that the enhancement did not apply. The court, using the categorical approach, analyzed the relevant Virginia statute of conviction and stated:

> [I]n *United States v. Campbell*, the Fourth Circuit held that attempt offenses do not qualify as controlled substance offenses under Section 4B1.2.
>
> Here, Mr. Davis has two state court convictions under 18.2-248, a statute that, among other things, criminalizes the attempted delivery of drugs. . . . And here, the text of United States Guideline Section 4B1.2 includes only completed offenses, not inchoate offenses. . . .
>
> Thus, the Court rules in favor of the defendant and sustains his objection to the total offense level. The base offense level will therefore be lowered from 24 to 14. As a result, Mr. Davis is only entitled to a two-level reduction for acceptance of responsibility, resulting in a total offense level of 12.

3

J.A. 132–33.

Application of *Campbell* and the categorical approach to the predicate offenses precluded consideration, for Guidelines-calculation purposes, of the fact that Davis's drug distribution offenses involved the actual, not attempted, distribution of controlled substances. Accordingly, the properly calculated Guidelines in Davis's case resulted in a base offense level 14 instead of 24. With a base offense level 14, Davis's Guidelines range was calculated as follows: a total offense level 12 and a Criminal History Category IV, resulting in a Guidelines range of 21 to 27 months rather than the initially calculated 57 to 71 months. There is no dispute that the Guidelines range was properly calculated.

C.

Prior to sentencing, the Government filed a memorandum seeking an upward variance to the statutory maximum of ten years' imprisonment. The Government argued that Davis's concealment of the firearm after being placed under arrest, his extensive criminal history and disciplinary record while incarcerated, and the fact that Davis was incarcerated or on probation for each of his criminal offenses since 2008, were key facts compelling an upward variance under the 18 U.S.C. § 3553(a) sentencing factors. J.A. 44–51. The Government also noted that the statutory maximum for Davis's offense had recently increased from 10 to 15 years, but that the change took effect after Davis's offense conduct. J.A. 46.[1]

---

[1] The Government's motion further stated that Davis would have qualified for a mandatory minimum sentence of 15 years under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), had the Government charged and proved that Davis's three (Continued)

At Davis's sentencing hearing, the Government relied in part on its earlier briefing, but also responded orally to several points raised by Davis in his presentence memorandum. The Government emphasized that the offense was extremely serious, contrary to Davis's contentions that he possessed the weapon for no "nefarious purpose" and that he "voluntarily" disclosed the firearm to the officers. J.A. 58, 137–38. The Government argued that Davis's disclosure of the weapon "was not a spontaneous admission borne out of a selfless desire to reduce the risks to everyone involved," J.A. 138, but instead a disclosure he made only after (1) trying to evade arrest in the first place, (2) requesting to have his handcuffs moved to the front, (3) moving around so much that the officers became suspicious, and (4) repeatedly lying about having anything illegal on his person, *id.* The Government further argued that it was only when Davis had exhausted all other possible options, and was blocks away from the magistrate's office, where the gun would inevitably have been discovered, that he attempted to "cut[] his losses" and disclosed the gun. J.A. 139. Finally, the Government noted that as Davis shifted around in the back seat of the police cruiser, the gun moved from being completely concealed to "hanging

---

prior convictions for serious drug offenses—namely, distributing Schedule I and II controlled substances on February 16, March 1, and July 20, 2012—had occurred on different occasions. J.A. 48. However, the Government conceded that, because it did not indict Davis under the ACCA, this statutory minimum did not apply. For his part, Davis refuted that the ACCA would have applied even had the Government charged him under it, arguing that "these offenses did not occur on occasions different from one another" under the "facts-intensive inquiry" required by *Wooden v. United States*, 595 U.S. 360 (2022). J.A. 142. These issues were not resolved, and did not play a role in the district court's sentence.

5

partly out of his waistband," positing that "the fact that he wasn't successful in reaching his gun wasn't for lack of trying." J.A. 137–38.

Davis filed a written pleading prior to his sentencing and moved for a downward variance from the original Guidelines calculation of 57 to 71 months, requesting a sentence of 36 months. J.A. 54. After the district court applied *Campbell* and revised the Guidelines range to 21 to 27 months, Davis argued at his sentencing hearing for a sentence at the low end of the revised range. J.A. 140. In support of his position, he presented several arguments in mitigation similar to the arguments raised in his written pleading for a variance. Namely, he maintained that the nature of the offense was mitigating because "the government has not suggested that Mr. Davis possessed the gun for any nefarious purpose" and because "Mr. Davis voluntarily told the officers that he had a firearm in his pants," an admission that "helped keep everyone safe that day." J.A. 58, 143–144. Additionally, Davis argued that his difficult childhood experiences and recent, positive strides toward living a law-abiding life prior to his arrest should factor into his sentence. J.A. 144–45.

Before issuing its sentence, the district court stated that it had reviewed the presentence report, the attached Sentencing Guidelines, the parties' positions on sentencing, the defendant's letters of support, the arguments of counsel, and the defendant's allocution. J.A. 149. The court then discussed the 18 U.S.C. § 3553(a) factors. It started by emphasizing the seriousness of the offense, stating that the evidence of Davis's guilt was "substantial," and that it reviewed "paragraph 8 from the presentence report, which also illuminated some of the facts and circumstances around the arrest." *Id.* It then recognized that Davis's "childhood was marked by instability, sickness, and abuse." *Id.*

6

The district court went on to discuss Davis's extensive criminal history, "which includes convictions for robbery, gang activity, distribution or sale of Scheduled I or II controlled substances, and driving on a suspended license," and noted that the instant offense occurred while Davis was under court supervision. J.A. 150.

The district court granted the government's motion for an upward variance. J.A. 152. In doing so, the court emphasized that "Davis committed this offense after sustaining at least two other convictions involving drug distribution," that his "actions and attempting to conceal the firearm from law enforcement upon his arrest placed a number of individuals in serious danger," and that he had "an extensive criminal history, alleged gang affiliations, [and] repeated incarceration." *Id.* The court expressed that it was "most trouble[ed]" by Davis's disciplinary record while incarcerated for his robbery offense, listing his numerous citations and noting that "every time Mr. Davis has been convicted of a crime since he was released on that robbery conviction, after committing all of these offenses while incarcerated, he's done so while he's been under a period of supervision from the Court." J.A. 152–53. In light of this pattern of criminal behavior and "everything as a whole," the district court concluded: "[W]hat has happened now has not worked, and I don't believe, when I look at this record, that a guideline range of 21 to 27 months is sufficient." J.A. 153–54.

Despite granting the Government's motion for a variance, the district court imposed a sentence of 72 months rather than the 120 months requested by the Government, J.A. 154, stating "that this sentence is sufficient, but not greater than necessary, pursuant to the factors enumerated in [§ 3553(a)]." *Id.* After outlining the conditions of Davis's supervised

7

release, which included mental health treatment among other special conditions, J.A. 154–56, the district court closed the sentencing hearing by stating that Davis has "been before courts a number of times, and I hope . . . it's going to finally sink in this time after this term of imprisonment, that you'll get your life together." J.A. 158.

## II.

Davis argues on appeal that his sentence is both procedurally and substantively unreasonable. We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "Under this deferential standard, we first review for procedural reasonableness. If the district court's decision is procedurally sound, we consider the substantive reasonableness of the sentence imposed." *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017) (internal citation omitted).

## A.

We begin with Davis's argument that his 72-month sentence was procedurally unreasonable. "For a sentence to satisfy the procedural prong of our review, the district court must begin its sentencing proceeding 'by correctly calculating the applicable Guidelines range . . . .'" *Blue*, 877 F.3d at 517 (quoting *Gall*, 552 U.S. at 49). "The court must thereafter give the parties the opportunity to argue for whatever sentence they deem appropriate and consider those arguments in light of all of the factors stated in 18 U.S.C. § 3553(a)." *United States v. Hernandez*, 603 F.3d 267, 270 (4th Cir. 2010). Davis does not contend error in these threshold requirements.

8

The district court must also "conduct an individualized assessment of the facts and arguments presented and impose an appropriate sentence, and it must explain the sentence chosen." *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020) (internal quotation marks and citations omitted). In doing so, the district court "must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why it has rejected those arguments." *United States v. Webb*, 965 F.3d 262, 270 (4th Cir. 2020) (cleaned up) (citation omitted). However, "this admonition focuses on the whole of a defendant's argument and does not require the court to address every argument a defendant makes." *United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020). That is, the district court is only required to address the defendant's "central thesis" in mitigation and "need not address separately every *specific* claim made in support." *United States v. Powers*, 40 F.4th 129, 137 (4th Cir. 2020) (cleaned up) (citation omitted) (emphasis in original).[2]

"[I]n determining whether there has been an adequate explanation, we do not evaluate a court's sentencing statements in a vacuum." *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006). Rather, we may discern the court's rationale from the "context surrounding [its] explanation." *Id.* "A sentencing court's explanation is sufficient if it, although somewhat briefly, outlines the defendant's particular history and characteristics not merely in passing or after the fact, but as part of its analysis of the

---

[2] We have recognized that "[a]ppellate review is not a game of 'Gotcha!' where we tally up the number of distinguishable arguments a defendant mentioned in the district court and then comb the sentencing transcript for proof the district court mentioned each one by name." *Powers*, 40 F.4th at 137.

9

statutory factors and in response to defense counsel's arguments . . . ." *Blue*, 877 F.3d at 519 (cleaned up).

Our task on appellate review is to determine whether the district court provided "some indication that [it] considered the § 3553(a) factors and applied them to the particular defendant, and also that it considered a defendant's nonfrivolous arguments for a lower sentence." *Nance*, 957 F.3d at 212–13 (cleaned up) (citations omitted). Although the district court's explanation "need not be elaborate or lengthy," when a district court's chosen sentence varies from the Guidelines range, we must be convinced that it gave "serious consideration" to the extent of the departure and "adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. King*, 673 F.3d 274, 283 (4th Cir. 2012) (citation omitted). Applying this standard, we are satisfied that the district court fulfilled its procedural requirements.

Davis contends on appeal that the district court "failed to provide sufficient consideration on the record," and "fail[ed] to explain," certain mitigation arguments he put forward—specifically, those concerning his adverse childhood experiences ("ACEs") and his recent improvements toward a productive and law-abiding life. Opening Br. at 8–9. However, the district court's consideration of Davis's arguments and explanation of its sentence cannot be viewed fairly by isolating only one or two factors for appellate review. An analysis of procedural reasonableness in many instances, including in this case, requires evaluating the interplay of all § 3553(a) factors in context. *See Montes-Pineda*, 445 F.3d at 381 ("The context surrounding a district court's explanation may imbue it with enough

10

content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly.").

Two of the district court's findings explain in large part its analysis of the statutory factors and its reasons for imposing a different sentence than that argued for by Davis. *See Blue*, 877 F.3d at 519. Those two findings are with respect to Davis's criminal history and the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1).

With respect to criminal history, the district court explained that "[w]hen considering [§ 3553(a)] factors, [it] notes that Mr. Davis has an extensive criminal history . . . which includes . . . distribution or sale of Scheduled I or II controlled substances." J.A. 150. After announcing that it would grant the Government's motion for an upward variance, it again emphasized that Davis "committed [the instant] offense after sustaining at least two other convictions involving drug distribution." J.A. 152. This repeated emphasis of Davis's prior drug distribution offenses makes clear that the district court viewed Davis's individualized culpability to be more in line with the higher Guidelines range of 57 to 71 months that would have resulted under the U.S.S.G. § 2k2.1(a)(2) enhancement.

The district court relied on the facts underlying Davis's prior convictions when determining his sentence, rather than the elements of "least culpable conduct criminalized by the predicate offense statute" that it used to calculate his *Guidelines* range. *See*

11

*Campbell*, 22 F.4th at 441 (internal quotation marks and citation omitted).[3] A sentencing court "may not presume that the Guidelines range is reasonable" and must rather "make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.[4] "A factual finding of this kind is reviewed for clear error, and the evidence [of Davis's past drug distribution offenses] demonstrates this finding was not clearly erroneous." *See United States v. McKinnie*, 21 F.4th 283, 291 (4th Cir. 2021). Although the district court could have explained its reliance on these facts more explicitly, "the context of [the district court's] explanation [makes this] patently obvious." *See Montes-Pineda*, 445 F.3d at 381.

As to the nature and circumstances of the offense, *see* 18 U.S.C. § 3553(a)(1), the district court's explanation makes clear that it flatly rejected Davis's position. In pre-trial filings and at his sentencing hearing, Davis sought to minimize his offense conduct, arguing

---

[3] A member of this court, writing in concurrence, recently explained:

> Remarking on [discretionary sentencing], other courts have noted that "district judges may and should use their sound discretion to sentence . . . on the basis of reliable information about the defendant's criminal history even where strict categorical classification of a prior conviction might produce a different guideline sentencing range." *United States v. Carter*, 961 F.3d 953, 954 (7th Cir. 2020). Thus even when a statutory enhancement is inapplicable, the "law leaves much to 'the judge's own professional judgment.'" *United States v. Powers*, 40 F.4th 129, 137 (4th Cir. 2022) (quoting *Rita* [*v. United States*], 551 U.S. [338,] 356, 127 S.Ct. 2456 [2007]).

*United States v. Graham*, 67 F.4th 218, 228 (4th Cir. 2023) (Wilkinson, J. concurring).

[4] "Congress has further established that, '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.'" *United States v. McKinnie*, 21 F.4th 283, 290 (4th Cir. 2021) (quoting 18 U.S.C. § 3661).

12

that while he should not have possessed a gun, there was no indication that he had used or intended to use the firearm for nefarious purposes. J.A. 58. Further, Davis argued in his pleadings to the district court that

> Mr. Davis voluntarily told the officers that he had a firearm in his pants. The officers – who missed the gun when searching Mr. Davis initially – were able to safely recover the firearm. . . . His honest statement to the officers helped keep everyone safe that day. His guidelines range does not reflect that "super-acceptance" of responsibility upon arrest.

J.A. 58–59.  Davis persisted in those arguments at sentencing: "[T]here is no evidence or suggestion that he had that gun for any nefarious purpose." J.A. 145.

The district court rejected Davis's arguments and instead viewed his actions in the back of the patrol car as aggravating conduct. The court responded to Davis's arguments by reading from paragraph 8 of the presentence report and alerting defense counsel that it would consider the facts within that paragraph as part of the nature, circumstances, and seriousness of the offense.[5] J.A. 146–47. Moments later, when discussing the sentencing

---

[5] Paragraph 8 of the presentence report states the following:

A review of the government's file revealed that after officers placed the defendant under arrest for reckless driving, he was searched incident to the arrest and placed in the back of the patrol car. He began complaining of pain from the handcuffs. Officers adjusted the handcuffs twice. The defendant asked to be handcuffed in the front, and officers denied the request. While being transported, the defendant began moving around in the back seat of the vehicle. He told officers that it was because of a shoulder condition, but since his handcuffs had already been adjusted twice, officers became suspicious and asked him if he had anything illegal on his body. After being asked multiple times and hesitating on answering all of them, the defendant confessed to having a firearm hidden on his genitals. Officers pulled over

(Continued)

13

factors, the court again emphasized that it "read paragraph 8 from the presentence report" and that the paragraph "illuminated some of the facts and circumstances around the arrest." J.A. 149. Paragraph 8 describes Davis's movement in the back seat of the police car and request to have his handcuffs moved to the front "because of a shoulder condition."[6] S.J.A. 172. It also describes the officers' growing suspicion and their repeated attempts to question Davis about whether he had anything illegal before he finally admitted to possessing the firearm. *Id.* After reviewing this paragraph, the district court explicitly found that "Mr. Davis' actions and attempting to conceal the firearm from law enforcement upon his arrest placed a number of individuals in serious danger." J.A. 152.

We see no error in the district court's findings as to the seriousness of the offense based on the information contained in paragraph 8. We have no difficulty in understanding the district court's comment that Davis's actions "placed a number of individuals in serious danger" to recognize Davis's acts as particularly concerning—at minimum, maintaining possession of a firearm while in custody following his arrest, but possibly even attempting

---

and gave him commands to tell them the exact location of the firearm. The firearm was located in his waistband and was secured.

S.J.A. 172.

[6] Notably, although Davis alleged "a shoulder condition" in his request to be handcuffed in the front, the presentence report provides only limited support. Davis reported that he was laid off from employment "after he hurt his shoulder on the job," S.J.A. 184, but offered no additional information in his description of his physical condition in the report, *see* S.J.A 183. Regardless of the credibility of Davis's allegation that he needed to be handcuffed in the front because of a shoulder condition, the district court had ample grounds to recognize the offense as one that "placed a number of individuals in serious danger." *See* J.A. 152.

14

to access the firearm while in the back of the patrol car—making his offense conduct far more serious than a simple possession. Nor do we have any difficulty understanding the district court's comments that Davis "attempt[ed] to conceal the firearm from law enforcement upon his arrest" as a rejection of Davis's position that "his honest statement" and "voluntary" disclosure of the weapon "helped keep everyone safe that day."

These findings from the district court as to the nature, circumstances, and seriousness of the offense negated several of Davis's mitigation arguments. For one, Davis argued that he should receive credit for voluntarily disclosing that he possessed the firearm. J.A. 58, 143–44. Davis's argument was made without the benefit of the court's findings as to the offense conduct and thus, was nonfrivolous at the time he made it. However, once the court announced its findings as to Davis's actions in the back of the patrol car and found that those actions "placed a number of individuals in serious danger," J.A. 152, his argument required no further explanation from the court because, here, the district court's "individualized assessment" of the facts," *see Nance*, 957 F.3d at 215, explained why it rejected the argument, *see Webb*, 965 F.3d at 270.

Additionally, Davis cited cases from the Eastern District of Virginia in which defendants convicted of similar crimes were given sentences of less than 36 months. J.A. 63–64. However, Davis did not identify any cases where a defendant repeatedly lied to law enforcement officers and maintained a firearm on his person, even possibly attempting to surreptitiously access that firearm, while in a confined space with those officers. Once again, the district court found that "Mr. Davis' actions and attempting to conceal the firearm from law enforcement upon his arrest placed a number of individuals in serious

15

danger." J.A. 152. This finding as to the seriousness of the offense, which we do not find to be "clearly erroneous," *see McKinnie*, 21 F.4th at 291, explains the district court's rejection of Davis's argument that the cited cases involved "similarly situated" defendants, J.A. 63, even absent a separate addressing of each case. A district court is required to address the defendant's "central thesis" in mitigation and "need not address separately every *specific* claim made in support." *See Powers*, 40 F.4th at 137 (cleaned up) (emphasis in original).

In addition to negating several of Davis's mitigation arguments, these findings as to the nature, circumstances, and seriousness of the offense also explain the district court's eventual weighing of the sentencing factors. The task of a sentencing judge is to conduct an "individualized assessment of the facts and arguments" and—as part of fashioning a substantively reasonable sentence—to "determin[e] the weight to be given each of the § 3553(a) factors" and decide, "on a whole," how the balance of those factors justifies a particular sentence. *See Nance*, 957 F.3d at 212, 215 (internal quotation marks and citations omitted). Davis asserts on appeal that the district court failed to adequately consider and explain its response to certain, discrete aspects of Davis's mitigation evidence and arguments. We disagree. It is clear to us, instead, that the district court considered this mitigation evidence and simply decided it was outweighed by competing § 3553(a) factors—a finding based on the "whole" of the factors, and one that does not require the district court to explicitly accept or reject each argument in order to fulfill its procedural requirements. *See United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012).

Nonetheless, we will address Davis's mitigation evidence and arguments that he asserts the district court failed to consider and explain, reviewing the arguments within the context of the whole of the district court's findings.

In arguing for a sentence at the low end of the revised Guidelines range, Davis pointed to evidence contained in the presentence report describing difficulties he faced during his childhood and argued that those adverse childhood experiences, or ACEs, "help explain his criminal history." J.A. 59, 61–62. Davis argued that he grew up "in an environment of fear, abuse, and danger." Opening Br. at 5–6. He suffered from learning disabilities as a child. S.J.A. 181. Both his mother and father used crack cocaine; his mother, father, and stepfather all physically abused him, and he was left homeless for a period when his mother and stepfather separated. S.J.A. 180–81. Davis also cited to research, published by the Department of Justice ("DOJ") and the Centers for Disease Control and Prevention ("CDC"), about how childhood trauma negatively impacts brain development. J.A. 59–61. Davis concluded his argument: "The adversity and violence [Davis] experienced as a child and his documented learning disabilities and mental illness clearly put [him] at a major disadvantage in life. Those circumstances surely help explain his criminal history." J.A. 62.

Davis contends on appeal that the district court did not "grapple with this argument in a meaningful way." Opening Br. at 12.[7] More specifically understood, Davis contends

---

[7] In addition to ACEs, Davis also argues that the district court insufficiently considered, and explained its response to, his evidence of recent improvements toward a productive, law-abiding life, such as "his increasing maturity, his turn away from drugs, (Continued)

17

that the court committed procedural error by failing to conduct an individualized assessment of the facts and argument, *see Nance*, 957 F.3d at 212, and by failing to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing," *see King*, 673 F.3d at 283 (citation omitted). We disagree.

First, the district court conducted an individualized assessment of the facts pertaining to Davis's ACEs because it expressly found that "Mr. Davis' childhood was marked by instability, sickness, and abuse. His father abused alcohol and crack cocaine. His stepfather physically abused him. And both his stepfather and mother also abused drugs. He spent time in the hospital as a child and dealt with learning disabilities." J.A. 149–50. Later, the district court commented that it "considered Mr. Davis' background, both the troubled background he had as a child and the parental influences on him." J.A. 152. In accepting and recounting these findings, the court "outline[d] the defendant's particular history and characteristics not merely in passing or after the fact, but as part of its analysis of the statutory factors." *Blue*, 877 F.3d at 519 (citation omitted). As with each of Davis's arguments in mitigation, the "record makes clear that the [district court] listened to [the] argument," "considered the supporting evidence," and "was fully aware of [Davis's

---

and his contributions to his family." Opening Br. at 9. However, the very commission of the present offense and possession of the firearm undermine that argument to a degree. More importantly, the district court clearly considered this evidence, stating on the record that it reviewed Davis's character letters. And the court's other findings make clear that any evidence of recent, positive improvements did not outweigh Davis's lengthy history of criminal violations and infractions, nor the nature, circumstances, and seriousness of the present offense.

ACEs] and imposed a sentence that [took] them into account." *See Rita*, 551 U.S. 338, 358 (2007).

Second, most significantly, Davis's ACEs argument did not undermine the district court's clear explanation that it determined a lower sentence to be insufficient after taking into consideration "everything as a whole." J.A. 154. In other words, the court concluded, and sufficiently explained, that the sentence it imposed "was warranted *in light of*," *see United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010) (emphasis added), its findings as to the record "as a whole," which included Davis's ACEs. After accepting and recounting Davis's ACEs argument, the district court explained:

> The Court has also considered the need for the sentence imposed to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from the further crimes of the defendant.
>
> When considering these factors, the court notes that Mr. Davis has an extensive criminal history that began when he was 19 years old, which includes convictions for robbery, gang activity, distribution or sale of Scheduled I or II controlled substances, and driving on a suspended license.

J.A. 150. The court continued:

> [T]he government moves for an upward variance . . . [a]nd so the court has reviewed the presentence report, has considered the nature and circumstances of the offense, has considered Mr. Davis' background, both the troubled background he had as a child and the parental influences on him, and has considered his history and characteristics of what he's done since he's 19 years old.
>
> Having considered the arguments and the Section 3553(a) factors, I'm going to grant the government's motion for an upward variance.

J.A. 151–52. And later, it concluded:

19

> [I]n addition to all of that, also, every time Mr. Davis has been convicted of a crime since he was released on that robbery conviction, after committing all of these offenses while incarcerated, he's done so while he's been under a period of supervision from the Court.
>
> So obviously, what has happened now has not worked, and I don't believe, when I look at this record, that a guideline range of 21 to 27 months is sufficient, given the nature of the circumstances that's before me now and his criminal history and his history and characteristics when I look at everything as a whole.

J.A. 153–54. It is evident from the district court's explanation that it found Davis's ACEs, as well as his other arguments in mitigation, insufficient to overcome the seriousness of the offense, the need for specific and general deterrence, and the need to protect the public. "[I]t was well within the court's discretion to accord more weight to the host of aggravating factors and decide that the sentence imposed would serve 'the § 3553 factors, on a whole.'" *Rivera-Santana*, 668 F.3d at 105.

Davis's central thesis—that ACEs "help explain his criminal history"—did not necessitate the district court to provide a lengthy, or detailed, explanation for why the argument failed to outweigh the court's other findings as to the § 3553(a) factors. A sentencing court is required to conduct an "'individualized assessment' based on the particular facts of the case before it" and "impose an individualized sentence." *Blue*, 877 F.3d at 518 (citations omitted). When performing that analysis, "[t]he adequacy of the sentencing court's explanation depends on the complexity of each case. . . . 'The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon the circumstances.'" *Id.* (quoting *Rita*, 551 U.S. at 356).

20

There is no dispute that Davis's childhood circumstances were tragic. But the record accompanying his ACEs argument did not elucidate an individualized connection between the research he cited and his own history and characteristics, nor did it advance an individualized, § 3553(a)-grounded, mitigation argument more complex than that inherent to a generalized assertion that childhood trauma may interfere with brain development. The research Davis cited makes clear that the neurodevelopmental effects from ACEs are possibilities, not certainties. For example, the CDC study he cited concludes that "exposure to ACEs *is associated with increased risk* for health problems across the lifespan," J.A. 61 (emphasis added), and notes that "[t]oxic stress from ACEs *can* change brain development and affect how the body responds to stress," *id.* (emphasis added). The presentence report suggests Davis was diagnosed with insomnia, anxiety, and PTSD sometime in 2021, and depression when he was a juvenile, *see* S.J.A. 183, but the record provided no further linkages between the CDC and DOJ research and Davis's own individual history and characteristics to suggest that the type of developmental effects that can happen, did in fact happen here. Under these circumstances, *see Blue*, 877 F.3d at 518–19, the district court was not required to engage in lengthy analysis of how Davis's history and characteristics, including his ACEs, interact with other § 3553(a) factors in light of the district court's overall explanation.

The district court's explanation of its sentence makes clear that Davis's personal history and characteristics did not diminish the seriousness of his offense, 18 U.S.C. § 3553(a)(2)(A), did not diminish the need for adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B), and did not diminish the need for the sentence imposed to protect the

21

public from further crimes, *id.* § 3553(a)(2)(C)—all of which were factors upon which the district court explicitly relied in concluding that an upward variance was necessary to fashion "a sentence sufficient, but not greater than necessary," *id.* § 3553(a).

"We acknowledge that the [district court] might have said more," *see Rita*, 551 U.S. 359, but find that the court nonetheless "adequately explain[ed] the chosen sentence" such that it "allow[s] for meaningful appellate review and promote[s] the perception of fair sentencing," *see King*, 673 F.3d at 283. In announcing its sentence, the district court repeatedly emphasized its review of the presentence report, which includes pertinent facts referenced by the court during sentencing: Between the ages of 19 and 24, Davis was convicted of a physically violent robbery, S.J.A. 174, gang-affiliated criminal acts, S.J.A. 175–76, and multiple distributions of Schedule I or II controlled substances, S.J.A. 176–77. Between the ages of 19 and 34, Davis spent the majority of his years serving a prison sentence or under court supervision. Davis is now in his mid-thirties, and whatever the underlying cause—adverse childhood experiences or something else—the district court reasonably found that his criminal record is extensive, that his criminal activity has persisted, and that his conduct in the present offense was far more serious than a simple possession. As the district court recognized at sentencing, "what has happened now has not worked." J.A. 153. What "has not worked," as the record establishes, is more than ten years of intermittent imprisonment and long-term supervision. After more than ten years of imprisonment and supervision, Davis not only possessed a firearm unlawfully, but did so in a manner that "placed a number of individuals in serious danger." J.A. 152.

22

In sum, "[t]he context surrounding [the] district court's explanation [] imbue[s] it with enough content for us to evaluate both [that] the court considered the § 3553(a) factors and [that] it did so properly." *See Montes-Pineda*, 445 F.3d at 381. The "central thesis" of Davis's arguments, *see Powers*, 40 F.4th at 137, and the "most important issue at sentencing," *see Nance*, 957 F.3d at 213, was whether Davis's adverse childhood experiences and recent improvements explain *and* outweigh the nature, circumstances, and seriousness of the instant offense, as well as his pattern of undeterred criminal conduct. The district court determined it did not and fashioned a sentence in accordance with that determination. Because the district court adequately explained its chosen sentence, and did not abuse its discretion, the sentence is procedurally reasonable.

B.

We next consider Davis's argument that his sentence was substantively unreasonable. "In reviewing the substantive reasonableness of a sentence, we 'examine the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a).'" *McKinnie*, 21 F.4th at 292 (alteration omitted) (quoting *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010)).

"[A]fter calculating the correct Guidelines range, if the district court determines that a sentence outside that range is appropriate, it may base its sentence on the Guidelines departure provisions *or* on other factors so long as it provides adequate justification for the deviation." *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011) (emphasis in original) (quoting *United States v. Evans*, 526 F.3d 155, 164 (4th Cir. 2008)). "Although

23

the district court's justification for the sentence must support the degree of the variance, and a major departure should be supported by a more significant justification than a minor one, a district court need not justify a sentence outside the Guidelines range with a finding of extraordinary circumstances." *Id.* at 366 (cleaned up) (internal quotation marks and citations omitted).

"[V]ariant sentences are generally reasonable when 'the reasons justifying the variance are tied to § 3553(a) and are plausible.'" *McKinnie*, 21 F.4th at 292 (quoting *United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019)). Ultimately,

> district courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors, and the fact that a variance sentence deviates, even significantly, from the Guidelines range does not alone render it presumptively unreasonable. Instead, we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.

*Nance*, 957 F.3d at 215 (internal quotation marks and citations omitted).

Here, the district court expressly concluded that the Guidelines range was insufficient to serve the § 3553(a) factors and varied upward to 72 months based on an individualized assessment of Davis's history, criminal history, and conduct in this case. The court's justifications for the variance are tied to § 3553(a) factors and wholly plausible. *See McKinnie*, 21 F.4th at 292. Further, the extent of the variance, although significant, is likewise reasonable.

The district court reasonably concluded that Davis's offense conduct—repeatedly failing to disclose that he possessed a gun and then asking for his handcuffs to be adjusted, including to the front of his body—indicated that Davis was attempting to harm the

24

officers, or at least had created a significant risk of harm to the officers. J.A. 152. Because the Guidelines range for his felon-in-possession charge did not fully account for that threat of serious harm, this reason justifying an upward variance is entirely plausible. *See McKinnie*, 21 F.4th at 292. Further, because Davis committed the instant offense while under court supervision, and because Davis possesses a lengthy criminal record, as well as a lengthy disciplinary record while incarcerated, the district court plausibly concluded that his Guidelines range did not provide for adequate specific deterrence.

Finally, the court's repeated emphasis of Davis's previous drug distribution convictions makes clear that it viewed his culpability to be more consistent with the originally calculated Guidelines range of 57 to 71 months, rather than the lower range that resulted on account of the application of the categorical approach to the statute of conviction, which included the possibility of conviction for an *attempt* offense. Although the district court did not state this reason for a variance as explicitly as it stated others, it is apparent to this court and similarly plausible. As discussed earlier in this opinion, Davis's offense conduct underlying the prior drug distribution convictions involved the *actual* distribution of a Schedule I or II controlled substance. The district court was not required to forgo consideration of those facts when applying the § 3553(a) sentencing factors. *See supra* n.3, n.4 and corresponding text.

Taking "everything as a whole," J.A. 154, the district court reasonably concluded that a variance upward to 72 months was necessary to reflect the § 3553(a) factors and determine a sentence "sufficient but not greater than necessary." Particularly given the

25

discretion afforded to sentencing courts to make these determinations, we find that Davis's sentence of 72 months is substantively reasonable.

## III.

Davis's contention that the district court failed to adequately address his mitigation arguments is not unreasonable. However, in reviewing the record, we do so within the context of the facts and arguments before the district court, the court's explanation of the § 3553(a) factors, and the relevant precedent guiding the court's exercise of discretion. Considering the record as a whole, the district court's explanation allows for meaningful appellate review and promotes the perception of fair sentencing. Similarly, in reviewing the totality of the circumstances, we conclude the district court did not abuse its discretion when it determined that a sentence of 72 months satisfied the standards set forth in § 3553(a).

The district court's judgment is

*AFFIRMED.*

26